Korsmo, J. —
¶1 This sexually violent predator (SVP) proceeding presents a matter of statutory interpretation— from what benchmark must a trial judge consider whether a detainee has demonstrated improvement due to treatment in order to obtain an evidentiary trial for release? We conclude that the legislature has directed trial courts to measure change from the last proceeding rather than from the original commitment.
FACTS
¶2 John Marcum, by stipulation, was committed as a sexually violent predator in January 2001. He made progress in treatment at the Special Commitment Center (SCC) on McNeil Island until the point in 2008 that the staff recommended he be transferred to less restrictive alternative (LRA) status. The trial court granted the transfer to LRA status in early 2009. Mr. Marcum moved to the nearby secure community transition facility (SCTF) in the hope that he would transition to unconditional release.
¶3 It appeared, however, that Mr. Marcum did not desire that goal. Unimpressed with the wages offered, he declined *601 to work or even to awaken on a regular morning schedule.[1] Although he continued with his sexual deviancy treatment, he made no progress toward transitioning, committed minor rules violations, and blamed the SCTF for his problems. The institution allowed him two years to try to find his way before terminating him from the LRA treatment program. The court revoked his LRA status on March 10, 2011, and returned him to his original SCC program. There he declined to renew his participation in deviancy treatment.
¶4 In 2012, he stipulated to his continued SVP status as part of his annual review. He did, however, obtain his own expert evaluation in anticipation of his next annual review. His expert ultimately agreed with Mr. Marcum’s personal view that he had benefited significantly from his previous treatment and should be a candidate for release. An evaluator for the State agreed that he had made progress and was suitable for LRA placement rather than total confinement.
¶5 Marcum petitioned in August 2013 for a trial on whether he continued to meet the definition of a sexually violent predator. He sought unconditional release rather than another LRA and admitted that he had not engaged in treatment since the revocation of the LRA. The trial court denied the request, ruling that Mr. Marcum was not entitled to an evidentiary trial since he had not made any progress after the LRA revocation and was not then actively participating in treatment.
¶6 Mr. Marcum timely appealed to this court.
ANALYSIS
 ¶7 The question presented is whether the trial judge should have measured the improvement in Mr. Marcum’s condition from the time he first entered the SCC or from the time the court last considered his condition at *602 the time his LRA was revoked. We conclude that the legislature has specified that this change should be measured from the last time that the court considered the detainee’s condition.
¶8 A sexually violent predator is someone “who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.” RCW 71.09.020(18). Once a person has been committed as an SVP, the State is required to conduct an annual review to determine whether the person remains an SVP. RCW 71.09.070. A person found to be an SVP has two ways to obtain release from the commitment. One method is for the State to authorize a detainee to file a petition for either unconditional release or transfer to an LRA. RCW 71.09.090(1). The basis for this petition is that the detainee has “so changed” that he either no longer meets the definition of an SVP or that an LRA is in the best interest of the detainee. Id.
¶9 The second method is that the detainee may petition, on the basis that he has “so changed” that he no longer fits the SVP definition or that an LRA is in his best interest, for unconditional release or transfer to LRA without the agreement of the State. RCW 71.09.090(2)(a). Under this method, a show cause hearing is held to determine whether an evi-dentiary trial shall be held. Id. Using the annual report, the State bears the burden of establishing by prima facie evidence that the detainee remains an SVP and that transfer to an LRA is not in the best interest of the detainee and conditions cannot be imposed that would protect society. RCW 71.09.090(2)(b). If the State fails to meet these burdens, an evidentiary trial is required. RCW 71.09.090(2)(c)(i).
¶10 However, if the State presents a prima facie case, the detainee can still obtain an evidentiary trial if probable cause exists to believe the detainee is no longer an SVP or *603 that an LRA is in the detainee’s best interest and the public can be adequately protected. RCW 71.09.090(2)(c)(ii). Whether or not the detainee has “so changed” is defined by statute:
Probable cause exists to believe that a person’s condition has “so changed,” under subsection (2) of this section, only when evidence exists, since the person’s last commitment trial, or less restrictive alternative revocation proceeding, of a substantial change in the person’s physical or mental condition such that the person either no longer meets the definition of a sexually violent predator or that a conditional release to a less restrictive alternative is in the person’s best interest and conditions can be imposed to adequately protect the community.
RCW 71.09.090(4)(a) (emphasis added).[2] The underscored language, which presents the primary issue for this appeal, was added by Laws of 2009, ch. 409, § 8.
¶11 This statute directs the trial court to measure “change” from the last time it had to assess the person’s condition—whether at a commitment hearing or a subsequent LRA revocation. The legislature clearly had that view in mind when, in 2005, it included the “person’s last commitment trial” language in the “so changed” probable cause definition. See Laws of 2005, ch. 344, § 2.[3] The use of the word “last” conclusively shows that the court was to solely measure change from the most recent court proceeding.
¶12 The 2009 amendment, adding the LRA revocation proceeding as an additional proceeding from which change is measured, is consistent with the 2005 amendment. A court is not required to go back to the beginning when there *604 has been a more recent assessment—whether at a commitment trial or an LRA revocation—from which to measure the person’s progress. In effect, these changes codify a “law of the case” type of approach to these matters. What a court has decided on one occasion is not subject to reconsideration at the next hearing absent evidence of intervening change resulting from treatment.
¶13 The Washington Supreme Court reviewed the “change” element when it considered various aspects of the 2005 amendments to this statute. “Requiring change as a prerequisite for an evidentiary hearing—a statutory requirement that pre-dated the 2005 amendments—does not offend substantive due process principles.” State v. McCuistion, 174 Wn.2d 369, 384, 275 P.3d 1092 (2012). Once a person has been found to be an SVP, the legislature can, without offending due process principles, properly require the SVP to establish that he has changed sufficiently due to treatment to obtain a trial. Id. at 384-85. His due process rights against undue confinement are satisfied by the requirement that the State establish his SVP status annually. Id. at 386. The right of an SVP to initiate a trial is a statutory right, not a constitutionally required one. Id. Accordingly, the legislature can define what is required to obtain this additional benefit.[4] Id.
¶14 The argument that change should be measured from the original commitment hearing effectively reads the LRA language (and probably the word “last” from the commitment trial language) out of the statute in derogation of our duty to give effect to all language found in legislation. In re Det. of Stout, 159 Wn.2d 357, 367 n.6, 150 P.3d 86 (2007). This is the case because any LRA revocation is always going to be later in time to the original (or most recent) commitment trial. The legislature easily could have tied the LRA *605 and commitment trial language to subsequent proceedings of the same variety, but did not. Instead, it tied that language to the “so changed” probable cause definition applicable to both proceedings. As noted earlier, this is entirely consistent with the 2005 legislative intent requiring change be measured from the most recent hearing rather than over the entire history of the commitment.
¶15 The legislative choice is reasonable and avoids waste of resources. Mr. Marcum’s reading results in a perpetual entitlement to an evidentiary trial every year once sufficient change to justify the first request has been shown. It also reduces the incentive to participate in additional training once a detainee has progressed sufficiently to justify a trial. Perhaps the second or third or fourth jury will find sufficient that which previous juries rejected.
¶16 Mr. Marcum had the chance in 2008 to seek a trial, but opted instead to go with an LRA rather than release. Having failed at the LRA, he does not now obtain a “do over” by using the same initial evidence of change to obtain a new commitment trial. He made his choice then and wisely sought the halfway step toward release. The unsuccessful LRA does not demonstrate that Mr. Marcum now is ready for release.
¶17 The 2009 amendment did not create an ambiguity or show legislative intent to alter the obligations of the trial judge. The legislature has expressed quite clearly that an SVP who desires to initiate a hearing on the basis that his condition has improved through treatment must show that he has made significant improvement since the last time a court formally looked at the case other than at the annual show cause hearing. That was the intent of the legislature in 2005 and the addition of the LRA language in 2009 did not alter that intent or create an ambiguity. The 2009 amendment simply recognized that an LRA revocation might be the most recent occasion at which a court was assessing the detainee and allowed judges to work from that point.
*606 ¶18 As in many endeavors, change wrought by treatment is incremental. It might not take much change to push an SVP from one side of the continuum to the other.[5] There is nothing wrong in directing that a judge measure change from the last time the judge did so. All the measurements ultimately involve the same end point—whether the detainee no longer is an SVP due to treatment. RCW 71.09-.090(4)(a). This simplifies the judge’s workload and creates an incentive for the SVP to continue with treatment.
¶19 This is a classic case of improvement to a point, and then a failure to progress. Because of that failure to show progress since the LRA was revoked, and the refusal thereafter to participate in treatment, the trial court correctly determined that Mr. Marcum was not entitled to a new commitment trial. There was no error.
¶20 Affirmed.
Brown, A.C.J., concurs.

 He stopped taking medication for depression.

 The reference to subsection (2) refers to RCW 71.09.090(2), the provision setting out the procedure for a detainee to petition for unconditional release or transfer to LRA status.

 See Pinal B. Rep. on S.B. 5582, at 1, 59th Leg., Reg. Sess. (Wash. 2005) (noting that the amendment “requires a showing that, since the person’s last commitment proceeding," there has been a “substantial change’’ in the offender (emphasis added)).

 “The legislature had every right to alter a scheme that provides protections beyond what is required by substantive due process to ensure committed persons do not abuse the system to receive full annual evidentiary hearings every year based solely upon a change to a single demographic factor.’’ McCuistion, 174 Wn.2d at 388-89.

 Thus, a detainee’s improvement since the original commitment is always going to be considered in the sense that it helps determine whether or not the detainee remains an SVP or is ready for an LRA. The trial judge simply does not have to go back to the beginning and reweigh evidence anew, but merely looks to see what has changed since the last review, taking the detainee’s status at the last review as a given.