201 P.3d 1066 (2009)
In the Matter of the DETENTION OF Leroy JONES.
No. 61025-2-I.
Court of Appeals of Washington, Division 1.
February 23, 2009.
*1067 David J.W. Hackett, King County Prosecutor's Office, Seattle, WA, for Appellant.
Virginia L. Faller, The Defender Association, Seattle, WA, for Respondent.
LEACH, J.
¶ 1 The State appeals the trial court's order granting Leroy Jones a trial on his petition for release to a proposed less restrictive alternative (LRA) as a sexually violent predator (SVP). Because Jones did not propose an LRA satisfying the five conditions mandated by RCW 71.09.092, we hold that the trial court erred in determining that Jones established probable cause entitling him to an LRA trial. The trial court did not err, however, when it allowed Jones to show a change in his condition since his initial commitment trial, rather than since his revocation hearing, and to support his petition with the declaration and report of a psychologist licensed outside of Washington State. We reverse.

Background
¶ 2 On March 19, 1999, Jones was civilly committed as an SVP under chapter 71.09 RCW.[1] In a bifurcated trial, the jury determined that Jones met the SVP criteria and that conditional release to an LRA was inappropriate.[2] This court affirmed.[3]
¶ 3 During his incarceration, Jones participated in the sex offender treatment program at the Special Commitment Center (SCC), reaching the sixth and final phase of the program. In 2005, the SCC determined that Jones had made sufficient progress to warrant his release to an LRA at the Secure Community Transition Facility (SCTF) on McNeil Island. With the parties' agreement, the court entered an order on October 20, 2005, releasing Jones to the LRA at the SCTF.
¶ 4 Jones soon violated the terms of this LRA by having consensual sex with his wife. As a result, he was returned to the SCC on March 8, 2006, and demoted to the fourth phase of the SCC treatment program. The trial court entered an order revoking Jones' LRA on July 31, 2006.
¶ 5 The next year, Jones petitioned the court for conditional release to another LRA. At the show cause hearing on November 15, 2007, the State submitted a report prepared by Drs. S. Paige Wilcoxson and Paul Spizman of the SCC. Based on an interview with Jones and an examination of his annual reviews, this report concluded that Jones continued to meet the SVP criteria and that release to an LRA was inappropriate. The report stated that Jones' LRA revocation evidenced his need for continued treatment to deal with his "long-standing pattern of manipulative, deceptive, and rule violating behavior."
¶ 6 Jones provided a report and declaration from Dr. Jeffrey Abracen, a psychologist licensed in Ontario, Canada, and employed by the Correctional Service of Canada.[4] After *1068 interviewing Jones and performing a record review focusing on his annual evaluations, Abracen reported that Jones should be placed in an LRA. Abracen noted that Jones had progressed to the fifth phase of the SCC treatment program since his demotion and that Wilcoxson had stated in her report that she "saw no evidence that Mr. Jones was moving toward committing another sexual offense."
¶ 7 Yet, in his report and declaration, Abracen failed to identify a specific treatment provider. In addition, he did not propose any specific course of treatment. Abracen only briefly described a generalized treatment plan for Jones, recommending that "a collaborative approach be taken with reference to the management of any sexual offender at least so far as therapy is concerned." Abracen also made the following statements about a secure residence:
It is the author's opinion that Mr. Jones could be safely maintained in an environment such as the SCTF or other structured setting that offers less than total confinement. Given that Mr. Jones is rated as a high risk of sexual recidivism a structured release to the community is highly recommended. Such a release should include frequent contact with both treatment providers and authorities familiar with his case. Any contact with criminal associates or any indication of ongoing drug use would represent an elevation with reference to dynamic risk.
Abracen further explained:
In my opinion, a "structured setting" ... could be a residence occupied by another responsible person who can be trusted to report violations, along with supervision and conditions imposed by a Department of Corrections Community Corrections Officer, electronic or GPS monitoring, and required sex offender treatment. At this time, I do not recommend that Mr. Jones live with his wife, Susie Jones. However, if Mr. Jones successfully transitions to the community, he could potentially transition to such a setting in the future.
¶ 8 Based on Abracen's report and declaration, Jones asserted that he had shown probable cause under RCW 71.09.090(2)(c)(ii), entitling him to an LRA trial. The State responded that Jones had failed to demonstrate probable cause because Abracen's report and declaration did not describe an LRA meeting the statutory definition. In particular, the State argued that the LRA did not address the five conditions listed in RCW 71.09.092.
¶ 9 The trial court rejected the State's argument and held that "the RCW 71.09.092 elements need not be shown at the annual review hearing in order to warrant a trial on an LRA." The court further determined that "Abracen's report and declaration constitute probable cause to believe that Mr. Jones' condition has so changed that release to [sic] less restrictive alternative would be in his best interests and conditions can be imposed that would adequately protect the community." At the same time the court entered an order granting Jones an LRA trial, it also certified the case for review, acknowledging that it had struggled with the statutory language and had relied in part on the dissent in In re Detention of Petersen.[5]
¶ 10 On January 28, 2008, the trial court entered an agreed scheduling order that stayed proceedings "until ... Jones has disclosed an LRA to the State that satisfies the requirements of RCW 71.09.020 and .092." This order further stated: "Following submission of [Jones'] LRA proposal, the parties shall ... set a status conference ... for the purposes of lifting this stay and setting a trial date approximately four (4) months from the date of the submission." We granted the State's motion for discretionary review.

Standard of Review
¶ 11 We review a trial court's legal conclusion that evidence meets the probable *1069 cause standard de novo.[6] We also review issues of statutory construction de novo.[7]

Discussion

A. Probable Cause Standard

¶ 12 The State argues that the trial court erred in holding that Jones demonstrated probable cause under RCW 71.09.090(2) because his proposed LRA failed to satisfy the five conditions listed in RCW 71.09.092. According to the State, the legislature intended to incorporate these five conditions into the probable cause standard when it amended the statutory definition of an LRA in 2001 to include an express cross-reference to RCW 71.09.092.[8] The State also points to amendments made in 2005 in which the legislature inserted the word "proposed" before "LRA" in RCW 71.09.090(2) to distinguish a "proposed LRA" from a hypothetical LRA.[9]
¶ 13 When construing a statute, this court must give effect to the legislature's intent and purpose.[10] We derive the intent and purpose of an unambiguous statute from its plain language alone.[11] All of the language in a statute must be given meaning, with no portion rendered meaningless or superfluous.[12] A literal reading will be avoided when it results in an unlikely, absurd, or strained interpretation.[13]
¶ 14 Under Washington's SVP act, a person civilly committed as an SVP may petition the court for conditional release to an LRA.[14] When the court receives a petition, it must hold a show cause hearing to determine whether probable cause has been established under RCW 71.09.090(2)(c).[15] If probable cause is demonstrated, then the court must grant an LRA trial.[16]
¶ 15 An SVP may obtain an LRA trial under RCW 71.09.090(2)(c)(ii) upon showing that "probable cause exists to believe that the [SVP's] condition has so changed that ... release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community." (Emphasis added.) This probable cause standard expressly refers to an LRA, which RCW 71.09.020(6) defines as "court-ordered treatment in a setting less restrictive than total confinement which satisfies the conditions set forth in RCW 71.09.092." In turn, RCW 71.09.092 imposes the following five conditions on an LRA:
Before the court may enter an order directing conditional release to a less restrictive alternative, it must find the following: (1) The person will be treated by a treatment provider who is qualified to provide such treatment in the state of Washington under chapter 18.155 RCW; (2) the treatment provider has presented a specific course of treatment and has agreed to assume responsibility for such treatment and will report progress to the court on a regular basis, and will report violations immediately to the court, the prosecutor, the supervising community corrections officer, and the superintendent of the special commitment center; (3) housing exists that is sufficiently secure to protect the community, and the person or agency providing *1070 housing to the conditionally released person has agreed in writing to accept the person, to provide the level of security required by the court, and immediately to report to the court, the prosecutor, the supervising community corrections officer, and the superintendent of the special commitment center if the person leaves the housing to which he or she has been assigned without authorization; (4) the person is willing to comply with the treatment provider and all requirements imposed by the treatment provider and by the court; and (5) the person is willing to comply with supervision requirements imposed by the department of corrections.
Read together, RCW 71.09.090(2)(c)(ii), RCW 71.09.020(6), and RCW 71.09.092 establish that an SVP must present evidence of an LRA satisfying the five conditions under RCW 71.09.092 to show probable cause under RCW 71.09.090(2)(c)(ii).
¶ 16 The legislature's precise reference to a "proposed LRA" reflects its intent that the probable cause showing focus on a specific LRA. By adding the adjective "proposed" before "LRA" in 2005, the legislature intended to clarify that the probable cause showing under RCW 71.09.090(2)(c)(ii) requires an SVP to present a specific "proposed LRA," as opposed to either a hypothetical plan or a generalized description of a plan to be proposed in the future. Had the legislature intended this showing to be made in the abstract without reference to a specific "proposed LRA," it would not have modified the term "LRA" with the word "proposed." In sum, the legislature has stated in plain language  through its amended LRA definition and its reference to a "proposed LRA"  that the probable cause showing under RCW 71.09.090(2)(c)(ii) requires an SVP to produce evidence of specific proposed court-ordered treatment that satisfies the five conditions in RCW 71.09.092.
¶ 17 Case law interpreting the statutory requirements that an LRA be in the SVP's "best interests" and "adequately protect the community" reinforces this conclusion. In In re Detention of Bergen,[17] this court held that the "best interests" determination focuses on the course of treatment specified in an LRA. "[T]he `best interests' standard relates to the appropriateness of treatment for an SVP.... [D]etermining whether an LRA is in his `best interests' involves considering whether it would adequately serve his treatment needs as an SVP."[18] The Bergen court further held that the "best interests" determination addresses whether an LRA promotes long-term treatment. "[T]he `best interests' determination does not simply require a treatment program; it ensures that the proposed treatment plan is an appropriate one and will further `successful treatment participation.'"[19] Therefore, an LRA must include a specific treatment plan for the "best interests" determination to have any significance. When a proposed LRA only suggests a generalized treatment concept, such as the "collaborative approach" recommended by Abracen, a court cannot properly assess whether the LRA is in the SVP's "best interests."
¶ 18 In addition to interpreting the "best interests" determination, the Bergen court also held that the "adequate community safety" determination involves examining the residence identified in an LRA:
"[A]dequate community safety" ... clearly conveys the idea that an LRA must adequately address community safety concerns.... [T]he "adequate community safety" determination necessarily assumes that [an SVP] is likely to reoffend and the question then becomes whether the proposed LRA will prevent an otherwise-likely offense if he is released. The focus of this determination is therefore on the plan, not the person.[[20]]
*1071 Given this focus on a proposed LRA's effect on community safety, the LRA must identify a specific residence. A court cannot properly determine whether a proposed LRA includes conditions that "adequately protect the community" when the LRA only refers to a hypothetical residence, such as the "structured setting" recommended by Abracen.[21]
¶ 19 Jones contends that a probable cause standard incorporating the five RCW 71.09.092 conditions conflicts with the standard established in Petersen. There, an SVP showed probable cause even though his proposed LRA did not identify a specific treatment provider or residence.[22]Petersen does not apply here, however, because it addresses the standard for probable cause under former RCW 71.09.090(2).[23]
¶ 20 Jones next argues that requiring the five RCW 71.09.092 conditions to demonstrate probable cause renders RCW 71.09.094(1) superfluous. That provision states:
Upon the conclusion of the evidence in a hearing held pursuant to RCW 71.09.090 or through summary judgment proceedings prior to such a hearing, if the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find that the conditions set forth in RCW 71.09.092 have been met, the court shall grant a motion by the state for a judgment as a matter of law on the issue of conditional release to a less restrictive alternative.
Jones asserts that this provision would be superfluous if the five RCW 71.09.092 conditions were part of the probable cause standard because "there would never be a situation where the State could seek summary judgment or a directed verdict pursuant to RCW 71.09.094(1)."
¶ 21 But the State correctly points out that Jones fails to consider that discovery could affect the sufficiency of an SVP's proposed LRA. For instance, a proposed treatment or housing provider may decline to participate in an SVP's proposed LRA during the course of discovery. Alternatively, the State may learn that an SVP's proposed supervisor cannot provide the level of supervision that the Department of Corrections (DOC) requires of all LRAs  a situation reflected in In re Detention of Campbell.[24] In that case, Campbell proposed an LRA that appeared to satisfy all five RCW 71.09.092 conditions.[25] Discovery subsequently demonstrated that Campbell's proposed LRA would not meet the supervision requirements the DOC imposes for any LRA. Relying on this information, the trial court granted the State's motion for summary judgment, and this court affirmed.[26] Thus, contrary to Jones' argument, a probable cause standard with the five RCW 71.09.092 conditions would not render RCW 71.09.094 superfluous since discovery regarding a proposed LRA could develop evidence supporting a motion for summary judgment.
¶ 22 Finally, Jones argues that a probable cause standard including the five RCW 71.09.092 conditions wastes taxpayer resources because this standard requires an SVP to appoint experts and prepare a specific treatment plan before the trial court has determined whether the SVP's condition has sufficiently changed. To prevent this waste, Jones suggests that the court determine the sufficiency of an alleged change in an SVP's *1072 condition before it tests the sufficiency of the conditions provided in an LRA. But this argument is a policy consideration that has been decided by the legislature. The court's obligation is to give effect to the legislature's decision by applying the plain language it used.
¶ 23 Applying the probable cause standard to this case, Abracen's declaration and report do not state sufficient facts to establish that probable cause exists to believe that Jones' proposed LRA is in his best interests and conditions can be imposed that adequately protect the community. To show probable cause, facts must exist which, if believed, warrant more proceedings.[27] It is undisputed that Abracen does not identify a specific treatment provider or residence in either his report or declaration. Abracen also fails to specify a course of treatment other than recommending a "collaborative approach." Because the facts contained in Abracen's report and declaration fail to satisfy all five RCW 71.09.092 conditions that are part of the probable cause standard, we reverse.

B. Commitment Trial Proceeding

¶ 24 The State argues that Jones failed to establish probable cause because Abracen erroneously reported a change in Jones' condition since his initial commitment trial in 1999, rather than since his LRA revocation in 2006. The State bases its argument on its interpretation of "commitment trial proceeding" in RCW 71.09.090(4)(a), which provides:
Probable cause exists to believe that a person's condition has "so changed," under subsection (2) of this section, only when evidence exists, since the person's last commitment trial proceeding, of a substantial change in the person's physical or mental condition such that the person either no longer meets the definition of a sexually violent predator or that a conditional release to a less restrictive alternative is in the person's best interest and conditions can be imposed to adequately protect the community.
(Emphasis added.) The State's argument is flawed because an SVP's commitment status is not at issue at an LRA revocation hearing. Whether or not the court decides to revoke the LRA, the SVP remains a "committed person."[28] Thus, an LRA revocation hearing cannot be considered a "commitment trial proceeding." We reject the State's broad construction of "commitment trial proceeding" as including an LRA revocation hearing.

C. Licensed Professional

¶ 25 The State argues that under RCW 71.09.090(4)(b) the trial court erred when it considered Abracen's report and declaration because he did not have a Washington State license at the time he evaluated Jones. RCW 71.09.090(4)(b), however, only provides that a hearing "may be ordered, or held, only when there is current evidence from a licensed professional." As a "licensed professional" is not defined by the statute, this term should be given its ordinary meaning.[29] We assume the legislature "means exactly what it says."[30] A plain reading of RCW 71.09.090(4)(b) only requires an expert to be licensed, not licensed in Washington State.
¶ 26 Moreover, other provisions in chapter 71.09 RCW state that a treatment provider participating in an LRA must be certified in Washington State.[31] For example, RCW 71.09.092(1) expressly provides that Washington State certification is required for a treatment provider participating in an LRA: "Before the court may enter an order directing conditional release to a less restrictive *1073 alternative, it must find the following: (1) The person will be treated by a treatment provider who is qualified to provide such treatment in the state of Washington under chapter 18.155 RCW."[32] The absence of similar language in RCW 71.09.090(4)(b) indicates that the legislature did not intend to require a "licensed professional" to possess a Washington State license.
¶ 27 As a further example, RCW 71.09.350(1) similarly states that a treatment provider must be certified in Washington State:
Examinations and treatment of sexually violent predators who are conditionally released to a less restrictive alternative under this chapter shall be conducted only by certified sex offender treatment providers or certified affiliate sex offender treatment providers under chapter 18.155 RCW.
But RCW 71.09.350(3) provides an exception for an expert who is not providing treatment:
Nothing in this section prohibits a qualified expert from examining or evaluating a sexually violent predator who has been conditionally released for purposes of presenting an opinion in court proceedings.
This certification exception underscores that an expert is not subject to the same requirements as a treatment provider and supports our conclusion that a "licensed professional" is not required to possess a Washington State license. As the State relies solely on statutes outside of chapter 71.09 RCW to construe "licensed professional," its argument is unpersuasive. Accordingly, we hold that RCW 71.09.090(4) does not require an expert who evaluates an SVP solely for purposes of presenting an opinion at a show cause hearing to be licensed in this state.

Conclusion
¶ 28 A plain reading of the LRA provisions shows that an SVP is required to satisfy the five RCW 71.09.092 conditions to demonstrate probable cause under RCW 71.09.090(2)(c)(ii). Because Jones' proposed LRA does not identify a specific treatment provider or residence, he fails to show probable cause. The State, however, misconstrues "commitment trial proceeding" and "licensed professional" under RCW 71.09.090(4). Therefore, the trial court did not err when it accepted and considered Abracen's opinion in deciding whether Jones had shown probable cause. The trial court's order granting Jones' LRA trial is reversed.
WE CONCUR: AGID and BECKER, JJ.
NOTES
[1] RCW 71.09.020(16) defines an SVP as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."
[2] See In re Det. of Jones, noted at 123 Wash.App. 1006, 2004 WL 1950459 (2004).
[3] See Jones, noted at 123 Wash.App. 1006, 2004 WL 1950459 (2004).
[4] Abracen is a member of the College of Psychologists of Ontario, the regulatory agency for the profession of psychology in the Province of Ontario. He has since obtained a temporary license in Washington and testified as an expert in In re Det. of Ambers, 160 Wash.2d 543, 158 P.3d 1144 (2007).
[5] 145 Wash.2d 789, 817, 42 P.3d 952 (2002) (Ireland, J., dissenting) ("[Former RCW 71.09.090(2)] does not require that all five [RCW 71.09.092] elements must be satisfied during a probable cause hearing. Rather, these elements must be proved at the release hearing.").
[6] Petersen, 145 Wash.2d at 799, 42 P.3d 952.
[7] In re Det. of Brock, 99 Wash.App. 722, 724, 995 P.2d 111 (2000).
[8] Laws of 2001, ch. 286, § 4. The legislature amended the LRA definition in 2001 by adding the phrase "which satisfies the conditions set forth in RCW 71.09.092."
[9] Laws of 2005, ch. 344, § 2.
[10] State v. Ransleben, 135 Wash.App. 535, 538, 144 P.3d 397 (2006) (citing Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995)).
[11] Ransleben, 135 Wash.App. at 538, 144 P.3d 397 (citing Waste Mgmt. of Seattle, Inc., v. Util. & Transp. Comm'n, 123 Wash.2d 621, 629, 869 P.2d 1034 (1994)).
[12] Brock, 99 Wash.App. at 724, 995 P.2d 111 (citing In re Det. of Petersen, 138 Wash.2d 70, 92, 980 P.2d 1204 (1999)).
[13] Brock, 99 Wash.App. at 724, 995 P.2d 111 (citing State v. Elgin, 118 Wash.2d 551, 555, 825 P.2d 314 (1992)).
[14] RCW 71.09.090(2)(a).
[15] RCW 71.09.090(2)(a).
[16] RCW 71.09.090(2)(c).
[17] 146 Wash.App. 515, 195 P.3d 529 (2008). In Bergen, the proposed LRA was examined at trial and rejected by the jury on grounds that the State had proved beyond a reasonable doubt that the proposed LRA was not in Bergen's best interests and did not include conditions that would adequately protect the community. See Bergen, 146 Wash.App. at 523, 195 P.3d 529.
[18] Bergen, 146 Wash.App. at 531, 195 P.3d 529.
[19] Bergen, 146 Wash.App. at 529, 195 P.3d 529.
[20] Bergen, 146 Wash.App. at 532-33, 195 P.3d 529.
[21] We also note that, in line with the "best interests" and "adequate community safety" determinations, a probable cause standard incorporating the five RCW 71.09.092 conditions advances "the statutory objectives of treating the SVP and keeping the community safe." Bergen, 146 Wash.App. at 528, 195 P.3d 529.
[22] Petersen, 145 Wash.2d at 802-04, 42 P.3d 952.
[23] The Petersen court expressly stated: "RCW 71.09.090 was amended in 2001. This appeal falls under the former statute." Petersen, 145 Wash.2d at 792 n. 1, 42 P.3d 952 (citation omitted).
[24] 130 Wash.App. 850, 124 P.3d 670 (2005). The supervision requirement at issue in Campbell is stated in RCW 71.09.092(5). This provision requires courts to find that the SVP "is willing to comply with supervision requirements imposed by the department of corrections."
[25] Campbell, 130 Wash.App. at 852, 124 P.3d 670.
[26] Campbell, 130 Wash.App. at 861-62, 124 P.3d 670.
[27] Petersen, 145 Wash.2d at 797, 42 P.3d 952.
[28] See Bergen, 146 Wash.App. at 533-34, 195 P.3d 529 (stating that an SVP at a conditional release trial does not "challenge the finding that he meets the commitment criteria" while an SVP at an unconditional release trial "contests the commitment criteria").
[29] State v. Alvarez, 128 Wash.2d 1, 11, 904 P.2d 754 (1995).
[30] Morgan v. Johnson, 137 Wash.2d 887, 891-92, 976 P.2d 619 (1999) (quoting State v. McCraw, 127 Wash.2d 281, 288, 898 P.2d 838 (1995)).
[31] RCW 71.09.350 allows uncertified treatment providers to examine and treat SVPs in three situations, which do not apply here.
[32] RCW 18.155.070 states the certification requirements, which include successfully completing an educational program and examination approved by the Secretary of Health and having no prior sex offense convictions as defined under RCW 9.94A.030.