2016 DEC 12 AM 8:50

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE DETENTION ) OF: ) | No. 75679-6-I |
| ) | Consolidated w/No. 75697-4-I |
| BRADLEY WARD, ) | |
| ) | |
| Respondent, ) | |
| ) | DIVISION ONE |
| v. ) | |
| ) | |
| STATE OF WASHINGTON, ) | UNPUBLISHED OPINION |
| ) | |
| Appellant. ) | FILED: December 12, 2016 |

SPEARMAN, J. —Bradley Ward has been housed in facilities on McNeil Island operated by the Department of Social and Health Services (DSHS) since he stipulated to commitment under the Sexually Violent Predator Act (SVPA) in 1991. This case is the latest appeal arising from ongoing litigation concerning Ward's conditional release to a less restrictive alternative (LRA) and his confinement in DSHS facilities. In the present action, the State and DSHS appeal the trial court's orders transferring Ward to a private facility at DSHS's expense and denying the State's motion to revoke Ward's LRA. We conclude that the trial court erred because it did not follow the statutory procedure in ordering Ward transferred or in ruling on the State's motion to revoke. We reverse and remand.

FACTS

This court has heard three previous cases concerning Ward's detention. In re Detention of Ward, 125 Wn. App. 381, 104 P.3d 747 (2005) (Ward I); In re Det. of Ward, 188 Wn. App. 1048, 2015 WL 4232058 (2015) (Ward II); In re Det. of Bradley Ward, 195 Wn. App. 1049, 2016 WL 4443697 (Ward III). We set out many of the background facts in Ward II, 188 Wn. App. 1048, 2015 WL 4232058. But because the facts are central to this ongoing dispute, we summarize them again here.

Ward demonstrated deviant sexual behavior from a young age. When he was sixteen, he suffered a traumatic brain injury that decreased his ability to control his behavior. Ward stipulated to commitment as a sexually violent predator (SVP) in 1991. From 1991 to 2007, he was housed at the Special Commitment Center (SCC), a total confinement facility on McNeil Island operated by DSHS. Ward's condition improved and in 2007, the parties agreed to his conditional release to the Secure Community Transition Facility (SCTF).

The SCTF, which is also located on McNeil Island, is a lower security facility than the SCC. Persons conditionally released to the SCTF experience greater freedom and are expected to be more independent than persons confined at the SCC. The order approving Ward's release to the SCTF is conditioned upon his participation in sex offender treatment; demonstrable progress in treatment; and compliance with facility rules, staff instructions, and state laws. The conditional release order states that the SCTF has agreed to accept Ward.

2

For several years, Ward made good progress while housed at the SCTF and was assessed as a low risk to reoffend. For the first time since his commitment, staff members believed that Ward might transition to an off island facility. But in 2012, Ward began experiencing psychotic symptoms and his behavior deteriorated. His treatment providers attributed Ward's mental decline to the stress of potentially leaving McNeil Island.

DSHS moved Ward between the SCTF and the SCC several times. According to DSHS, it moved Ward to the SCC when his mental state deteriorated to such a point that living at the SCTF was not safe for him or for other residents. Ward's treatment provider expressed concern that the environment at the SCC exacerbated Ward's mental illness. DSHS maintained that it was better able to assess and manage Ward's condition at the SCC than at the SCTF.

Ward has been continuously housed at the SCC since October 2012. In 2012-13, the SCC frequently placed Ward in solitary confinement. During one period in 2012-13, Ward spent 276 out of 413 days in solitary.

In 2014, the State filed a motion to revoke Ward's LRA pursuant to RCW 71.09.098. Ward II, 2015 WL 4232058 at *3. The trial court denied the State's motion and ordered Ward returned to the SCTF. Id. at *4. The order states that Ward shall be transported to the SCTF within 45 days. Separately, the trial court also ordered an unconditional release trial pursuant to RCW 71.09.090. Ward III, WL 4443697 at *1, n.1.

3

This court placed a stay on Ward's transfer pending appeal. While the appeal was pending, Ward filed a motion to dismiss his commitment as a sexually violent predator (SVP). Ward III, 195 Wn. App. 1048, 2016 WL 4443697 at *1. He argued that, because the SCC failed to provide adequate treatment, he should be released from the SCC and detained for evaluation at a mental health facility. The trial court denied Ward's motion for insufficient evidence but granted a hearing on the merits of the motion. The trial court ruled that, if it found that continued commitment at the SCC violated Ward's constitutional or statutory rights, it had authority to order Ward's unconditional release. This court granted discretionary review on the question of whether the hearing was properly ordered and placed a stay on proceedings.

Throughout 2014 and 2015, Ward's mental health remained poor and his behavior was erratic. Ward's unconditional release hearing was continued multiple times due to his psychosis.

Ward was not involved in sex offender treatment (SOT) during 2014 or 2015. Ward's SOT provider, psychologist Mark B. Whitehill, stated that Ward was incapable of benefitting from SOT due to his mental state. Whitehill stated that Ward's mental state appeared to dampen his sexual tendencies. He opined that Ward's mental illness lowered his risk of committing another sexually violent offense but increased his risk of engaging in general violence. In Whitehill's opinion, Ward needed intensive clinical psychiatric care not available at the SCC. Whitehill suggested that Western State Hospital would be a more appropriate placement for Ward.

Whitehill reported on Ward's sentiments about his housing and treatment. Ward denied wanting to be transferred to Western State. He occasionally expressed a desire to return to the SCTF, but often described the SCC as "quiet" and "comfortable." Clerk's Papers (CP) at 1255. Ward sometimes expressed a desire to live at the "Golden SCTF" in Venice, Italy. CP at 1263.

Psychiatrist Mark McClung conducted Ward's annual review in March 2015. McClung concluded that Ward's behavior posed a safety risk to himself and others. He also concluded that Ward's efforts to elude staff members indicated that an LRA would not adequately protect the community. McClung assessed Ward as a high risk to reoffend.

In July 2015, this court issued its opinion in Ward II, 2015 WL 4232058. We held that the trial court did not abuse its discretion in denying the State's motion to revoke under RCW 71.09.098. Id. at *7. In particular, the Ward II court noted that the trial court "thoughtfully analyzed" each factor required by the statute. Id. at *5. The stay on Ward's transfer to the SCTF was lifted on September 4, 2015. DSHS did not transfer Ward.

In September 2015, a female staff member at the SCC reported that Ward assaulted her. The staff member, Brandie Young, often helped Ward shower. According to Young, on this occasion Ward began to shower with his pants on. When she told him to take his pants off, Ward grabbed her arm with one hand and her shirt collar with the other. Young hit Ward with her open hand and pushed his chest. Ward fell backward, pulling Young with him by her shirt. Young stated that Ward continued to hold her shirt and "claw at" her with his other hand

5

until help arrived. CP at 878. McClung spoke with Ward about the incident. According to McClung, Ward stated that he grabbed Young because she was being bossy and he needed to assert power over her.

On October 14, the SCC's superintendent, Mark Strong, revoked Ward's permission to reside at the SCTF. Based on Ward's recent behavior and his annual review, Strong asserted that placement at the SCTF was not in Ward's best interest and did not adequately protect the community.

On November 20, the State again petitioned to revoke Ward's LRA. The State asserted that Ward had repeatedly violated the conditions of his release and that he needed more supervision and treatment than he could receive at the SCTF. In addition, the State argued that the trial court was required to revoke Ward's LRA because he no longer had permission to reside at the SCTF and because he was not participating in SOT as required by his conditional release. The State also asserted that conditions at the SCC had improved since the last revocation hearing.

As evidence that Ward had violated the conditions of his release, the State submitted incident reports documenting Ward's behavior throughout 2014 and 2015. The reported behavior included incidents of Ward urinating and defecating on himself, refusing to shower or change clothes, entering common rooms naked, entering off-limits areas, grabbing staff members' badges and wrists, hitting staff members, and threatening staff members. Evidence of the alleged

6

assault included incident reports and deposition testimony from Young and a member of the security team who responded to assist her.[1]

The parties agreed to continue the hearing on the State's motion to revoke until June 2016. Between November 2015 and May 2016, the parties had various disputes about scheduling and discovery. On May 15, the State struck the hearing on its motion to revoke due to a scheduling conflict. On May 23, Ward filed a motion to hold the SCC in contempt for failing to transfer Ward to the SCTF. According to Ward's counsel, she filed the contempt motion because the hearing on the motion to revoke had not been rescheduled and she wanted to prompt action on Ward's behalf.

The trial court heard arguments on Ward's contempt motion on June 20, 2016. The SCC argued that its authority to revoke permission to reside at the SCTF was distinct from the court's authority to continue or revoke an SVP's conditional release to an LRA facility. The SCC asserted that the court had authority to approve conditional release to some other facility but could not divest the SCC of its authority to consent to residence at the SCTF.

The trial court found the SCC in contempt for willfully failing to comply with the order to return Ward to the SCTF but stated that it did not know what remedies were available. The court noted that "everyone agrees that it would be more appropriate for Mr. Ward to be housed at Western State Hospital" but expressed doubt as to whether it could order Ward transferred to a mental

---

[1] Ward conducted the depositions and submitted them with his opposition to the State's motion. The deposition testimony is consistent with the incident reports submitted by the State.

hospital. Verbatim Report of Proceedings (6/20/2016) at 15. The court directed Ward's counsel to identify remedies for contempt and suggested that an alternative residence could be appropriate. The trial court set a remedies hearing for July 11 and set the State's motion to revoke for the same day.

On July 6, the SCC filed a memorandum arguing that the law allowed the trial court to impose, at most, remedial sanctions designed to coerce the SCC to place Ward at the SCTF. The SCC submitted several attachments with its memorandum, including the report from the SCC's 2015 independent review and a declaration from the SCC's current superintendent.

The 2015 review states that the SCC has made significant improvement in responding appropriately to disruptive behavior. In particular, the report congratulates the SCC for reducing its use of seclusion and physical restraint to a level within professional standards. But the report also notes that the SCC does not have sufficient psychiatric services to meet the needs of its residents. In his declaration, the SCC's superintendent states that the SCC has contracted additional staff since the annual review and is continuing to make further improvements. He declares that Ward is now under the care of a staff psychiatrist and has recommenced participation in sex offender treatment.

On July 7, Ward filed his response to the State's motion to revoke his LRA. Ward asserted that he had not willfully violated the conditions of his LRA and that any noncompliant behavior was the result of his inadequately treated mental illness. With his response, Ward submitted a report from his expert, psychiatrist Alan A. Abrams. Abrams states that Ward has complex medical and

8

psychological problems. While Abrams notes that the SCC's use of punitive isolation and seclusion has nearly ceased, he states that the SCC is not providing Ward with adequate treatment to address his severe mental illness. According to Abrams, Ward expressed dissatisfaction with his continued residence at the SCC.

In Abrams' assessment, Ward would have the ability to comply with his LRA if he received adequate treatment addressing his mental health and lack of social skills. He opined that such holistic treatment would be in Ward's best interest. Abrams assessed Ward as a low risk to the public.

On Friday July 8, Ward filed his response to the SCC memorandum of law regarding contempt findings. Ward's counsel stated that, at the court's request, she had explored alternatives to the SCTF and had secured suitable housing for Ward. Counsel attached a proposal from Aacres, LLC, an agency that provides supported living services. The proposal stated that Aacres agreed to accept Ward as a resident, provide individualized treatment, and provide security. Aacres estimated the cost for Ward's housing and treatment at $282,520 per year. The information did not identify an address for a specific proposed residence.

On Monday July 11, the trial court held a combined hearing on the State's motion to revoke and on remedies for the contempt finding. The court first heard argument on the State's motion to revoke Ward's LRA. The State asserted that the court should not consider Ward's filing regarding Aacres because it was untimely filed and because it was not filed as part of Ward's response to the

State's motion to revoke but as part of the contempt action between Ward and the SCC. The trial court responded, "Well, it may be improper, but I've already read the materials, so it's pretty hard to unring the bell. They are late. If you need more time to respond, we can reset today's hearing." VRP (7/11/16) at 23.

The State argued that it had presented evidence that Ward had violated the conditions of his conditional release and that Ward required more care and supervision than he could receive at the SCTF. The State also contended that since Ward no longer had permission to reside at the SCTF, his conditional release to the SCTF could not be continued. In response, Ward's counsel argued that Ward was not receiving adequate care at the SCC and that Aacres was a more appropriate placement for him.

The court next heard argument on the contempt issue. The SCC asserted that the only appropriate sanction was one requiring the SCC to place Ward at the SCTF but argued that this sanction was incongruous with the SCC's authority to revoke permission to reside at the SCTF. The SCC also asserted that counsel had not yet had an opportunity to discuss the Aacres' proposal with the SCC and that the proposal was not sufficiently specific because no address had been identified. In response, Ward reasserted that the SCC was in contempt and that Ward needed to be "in a better place." VRP (7/11/16) at 37.

The trial court ruled from the bench that Ward's behavioral issues evidence mental health problems and that he is not getting effective treatment at the SCC. It stated that it could not adequately evaluate the alleged assault on the female staff member because the State did not call her as a witness. The court

10

stated: "[i]n addressing the contempt issue, I will specifically direct that Mr. Ward be placed in the Aacres program in whatever facility they find to be most appropriate for him." VRP (7/11/16) at 39. The court later described the Aacres proposal as "an appropriate modification of the LRA." VRP (7/11/16) at 40.

The State asked for clarification as to whether the court found that Ward was in violation of the terms of his conditional release either because he no longer had permission to live at the SCTF or because of his behavior. The court stated that Ward's lack of housing was not a violation because it was a voluntary decision by the SCC. As to Ward's behavior, the court stated that it was "not going to address" whether the behavioral issues were violations of Ward's LRA.

The State asked for clarification as to whether the court had determined that Ward needed more care, monitoring, supervision, and treatment than he could get under his conditional release. The trial court stated that Ward was not receiving the treatment he needed at the SCC and could not receive it at the SCTF because the superintendent would not allow him to live there. The State asked if the trial court was modifying Ward's LRA rather than revoking it. The trial court stated:

> I'm modifying it and directing his placement with the facility managed by Aacres.
> ...
> It is an alternative placement given that the SCTF is no longer available to Mr. Ward. So I think absent revocation of the LRA, then it's incumbent on the Court or the State to find some other facility. I think, frankly, the respondent's relieved the State of the duty to find such a facility by searching out and finding an appropriate facility on their own.

VRP (7/11/16) at 43.

11

On July 27, Ward notified the State of the address that Aacres identified as Ward's potential residence. That same day, the State moved for the court to order a DOC investigation of the residence as required by RCW 71.09.096. The State anticipated that DOC would require 60-90 days to complete the investigation.

On August 17, the trial court held a presentation hearing. Ward presented a proposed order under which he would be released from the SCC on September 1 and DSHS would pay all expenses described in the Aacres proposal. The State argued that the proposed release date did not provide time for a DOC investigation of the site or 30 day notice of Ward's change of address, both of which the State asserted were required by statute. The SCC objected to the provision requiring it to pay for Ward's placement at Aacres. The SCC contended that it had not had the opportunity to negotiate terms with Aacres or enter into a contract with the company. The trial court adopted Ward's proposed order. It found that no further notice was necessary, no DOC investigation was necessary, and that any difficulty the SCC experienced in negotiating payments was a "self-inflicted injury." VRP (8/17/2016) at 56.

In the written order, the trial court describes Aacres as "an appropriate placement for Mr. Ward on his continued LRA." CP at 186. The order requires DSHS to pay all expenses estimated in the Aacres proposal and orders Ward transferred to Aacres on September 1. As a sanction for contempt, the order requires DSHS to facilitate Ward's transfer to Aacres.

On August 19, an investigator from the Attorney General's office visited the Aacres address identified as Ward's new placement. The investigator reported that the address is a single-family home with a fenced back yard. An established church, which holds all-ages services and a weekly youth group, is located across the street from the Aacres address. The property is in a residential neighborhood within a mile of three schools and two youth centers.

On August 22, the State and the SCC both filed notices of appeal and moved this court for an emergency stay on the trial court's August 17 order. That same day, this court filed its opinion in Ward III, 2016 WL 4443697. In that case, we considered whether the trial court properly determined that it had authority to unconditionally release Ward from confinement as an SVP if it determined that the conditions of his confinement violated his constitutional rights. Id. at *2. We concluded that, under the SVPA, the trial court may only order unconditional release if the State fails to prove that the respondent meets or continues to meet the statutory definition of an SVP. Id. at *3. We observed that even if Ward were to establish in a separate proceeding that the conditions of his confinement were unconstitutional, the remedy would be an injunction or an award of damages, not release. Id. at *2.

On September 6, the trial court issued an order denying reconsideration and a letter explaining its order. In the letter, the trial court states that Ward's placement at Aacres represents a modification of his LRA. The court also states that its order transferring Ward to Aacres was intended, in part, as a remedy for the State's continuing violation of the 2014 court order. The letter states that the

State and the SCC may avoid placing Ward at Aacres by returning him to the SCTF.

The following day, Ward filed a motion to vacate the contempt finding against the SCC. At the hearing, Ward's counsel explained that she had realized that the trial court's August 17 order was flawed. She stated that if the SCC chose to avoid the sanction by allowing Ward to return to the SCTF, the SCC would violate Ward's modified LRA, which orders him to reside at Aacres. Counsel also filed a petition to modify Ward's LRA and asked the court to set a trial date in the event that a petition and trial are necessary for the court to order new housing for Ward.

The trial court stated that it would vacate the finding and sanction for contempt if authorized by this court under RAP 7.2. The court granted Ward's petition for an LRA modification trial and set that trial concurrently with Ward's unconditional release trial. This court denied the motion to vacate the finding and sanction for contempt and placed a stay on the trial.

DISCUSSION

Contempt

The State and the SCC[2] contend that the trial court erred in finding the SCC in contempt and in fashioning its sanction. The State and the SCC assert that the trial court's order transferring Ward to Aacres at DSHS's expense was based on contempt.

---

[2] The SCC is a division of DSHS. In this action, the terms are used interchangeably. The appellant refers to itself as SCC for purposes of this appeal.

The purpose of a civil contempt sanction is "to compel compliance with a court order." Britannia Holdings Ltd. v. Greer, 127 Wn. App. 926, 932, 113 P.3d 1041 (2005) (citing RCW 7.21.010)). A sanction "must contain a purge clause" allowing the contemnor to avoid contempt by complying with the court order. Id. at 933 (citing In re Interests of M.B., 101 Wn. App. 425, 439-40, 3 P.3d 780 (2000)).

Ward does not defend the finding of contempt or order of sanctions, and thus appears to concede that they were entered in error. But Ward defends the order transferring him to Aacres at DSHS's expense as a valid modification of his LRA, independent of the court's sanctioning authority. We conclude that the trial court's August 17 order was not a valid sanction for contempt and consider whether the order is valid under the SVPA as a modification of Ward's LRA.

Modification

The State argues that the trial court's order transferring Ward to Aacres is not valid as a modification of Ward's LRA because the trial court did not follow statutory procedures. The SCC contends that the trial court only had personal jurisdiction over it in the contempt action and that, independent of that action, the trial court had no authority to order the SCC to pay for the Aacres placement.

The parties agree that this court reviews a trial court's decision to revoke or modify an LRA for abuse of discretion. The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995) (citing Davis v. Globe Mach. Mfg. Co., 102 Wn.2d 68, 77, 684 P.2d 692 (1984)). A decision based on

an incorrect legal standard is an abuse of discretion. In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997) (citing State v. Rundquist, 79 Wn. App. 786, 905 P.2d 922 (1995)). In a proceeding under the SVPA, chapter 71.09 RCW, the trial court's authority is limited to that found in the statute. In re Detention of Skinner, 122 Wn. App. 620, 632, 94 P.3d 981 (2004) (citing State v. Phelps, 113 Wn. App. 347, 354-55, 57 P.3d 624 (2002)). Failure to follow the statute "renders the court's action void." Id.

The SVPA defines a sexually violent predator as a person who has committed a sexually violent crime and who suffers from a mental abnormality or personality disorder that makes him or her likely to engage in predatory acts of sexual violence if not confined. RCW 71.09.020(18). Commitment under the SVPA is indefinite and lasts so long as the person continues to meet the definition of an SVP. In re Detention of Rushton, 190 Wn. App. 358, 368, 359 P.3d 935 (2015).

A person civilly committed as an SVP may petition for conditional release to an LRA through the show cause process set out in RCW 71.09.090. In re Detention of Campbell, 130 Wn. App. 850, 855, 124 P.3d 670 (2005). This same process governs when a committed person who has been granted conditional release to the SCTF seeks release to a less restrictive facility. RCW 71.09.280. Under the show cause process, the petitioner must first show probable cause that his condition has so changed that conditional release is appropriate. RCW 71.09.090(2)(a). The petitioner must also present the court with a specific LRA proposal. In re Detention of Jones, 149 Wn. App. 16, 26, 201 P.3d 1066 (2009).

If the petitioner meets this initial burden, the court orders a trial to determine whether conditional release to the specific proposed alternative is in the petitioner's best interest and adequate to protect the community. RCW 71.09.090(2)(c). Before ordering conditional release, the trial court must find that the proposed LRA satisfies the statutory requirements. Jones, 149 Wn. App. at 28-29. See also Skinner, 122 Wn. App. at 627 (stating that a court may not order conditional release unless the proposal meets the statutory conditions). These requirements include a DOC investigation of the proposed placement. RCW 71.09.096(4).

A separate statute, RCW 71.09.098, establishes a procedure for revoking or modifying an LRA. In this case, the State petitioned to revoke Ward's LRA under RCW 71.09.098. The trial court denied the motion and stated that it was modifying rather than revoking the LRA. There was no petition to modify before the trial court.

The parties dispute whether the trial court had statutory authority to modify the LRA. The State asserts that, by proposing Aacres as a placement, Ward was seeking release from the SCTF to a less restrictive facility, a proceeding governed by the show cause process set out in RCW 71.09.090. The State asserts that the trial court failed to follow any of the procedures required under that statute. Ward does not argue that the trial court followed the show cause process. He contends that the trial court had authority to order different housing for Ward under RCW 71.09.098. Ward relies on RCW 71.09.098(7), which states

that, on a motion to modify, "[t]he court has authority to modify its conditional release order by ... requiring new housing for the person . . . ." Resp. Br. at 40.

RCW 71.09.098 sets out procedures relevant to revoking or modifying an existing conditional release order. Under that statute, the State, the SCC, a service provider, or a community corrections officer "may petition the court for an immediate hearing for the purpose of revoking or modifying the terms of the person's conditional release to a less restrictive alternative . . . ." RCW 71.09.098(1). A petition under RCW 71.09.098 is proper if the petitioner believes the released person: "(a) violated or is in violation of the terms and conditions of the court's conditional release order; or (b) is in need of additional care, monitoring, supervision, or treatment . . . ." RCW 71.09.098(1)(a). In a motion to modify, the State has the burden to prove one of these allegations by a preponderance of the evidence. RCW 71.09.098(5)(c). If the State meets its burden, the court "shall modify the conditional release order by adding conditions . . . . The court has authority to modify its conditional release order by substituting a new treatment provider, requiring new housing for the person, or imposing such additional supervision conditions as the court deems appropriate." RCW 71.09.098(7).

The statute that Ward relies on, RCW 71.09.098, does not apply to petitions by a committed person. Only the State, the SCC, a treatment provider, or a corrections officer may petition under RCW 71.09.098. The trial court's authority to order different housing only applies after the State has met its burden of proving that the existing conditional release order is no longer appropriate

because the committed person has violated its conditions or needs additional care and supervision. We conclude that the order modifying Ward's LRA and ordering different housing was not authorized by RCW 71.09.098.

Ward does not assert an alternative statute authorizing modification of Ward's LRA. Rather, he argues that the show cause provision in RCW 71.09.090 is inapposite. Ward argues that the show cause process only applies if the committed person seeks release to a facility that is less restrictive than the one identified on his LRA. He contends that Aacres is not less restrictive than the SCTF and RCW 71.09.090 does not apply.

Ward asserts that "less restrictive" is not the same as "less secure." Resp. Br. at 41. He argues that a placement is more or less "restrictive" based on the conditions of supervision in the conditional release order, not the facility. Id. Ward contends that, other than housing, the terms of his LRA remain the same and that his placement at Aacres is thus equally restrictive as his placement at the SCTF.[3]

We reject this argument. By referring to a person's "placement" at a "facility," RCW 71.09.280 expressly invokes the show cause process when a committed person seeks to change his housing, not other terms of the LRA. In addition, the stated purpose of the SVPA is to protect the public from sexually violent predators. RCW 71.09.010. In that context, the restrictiveness of a facility

---

[3] Ward also argues that if "less restrictive" as used in the statute means "less secure," it would require the SCC to follow the show cause process anytime it transfers an SVP from the SCTF on McNeil Island to the King County SCTF. But the statute distinguishes between the two SCTF's operated by DSHS and all other placements. RCW 71.09.280.

19

logically refers to the degree to which the facility restricts the committed person from the community. Ward makes no argument that the residence designated by Aacres is as restricted from the community as the SCTF.

Ward also appears to argue that the trial court was authorized to order different housing because the SCC revoked permission for Ward to reside at the SCTF. Ward cites to no authority supporting this proposition.

Ward did not petition for release from the SCTF to a less restrictive facility under the show cause process of RCW 71.09.090 and the trial court did not follow that process. The trial court's order modifying Ward's LRA was not authorized by RCW 71.09.098. Ward presents no argument that the order was authorized by some other provision of the SVPA. We conclude that the trial court erred in modifying Ward's LRA and ordering him transferred to Aacres. In a proceeding under the SVPA, the trial court's failure to follow the statute "renders the court's action void." Skinner, 122 Wn. App. at 632.

Because we conclude that the trial court's order transferring Ward to Aacres was not a valid modification of Ward's LRA, we do not reach the SCC's argument that the trial court lacked personal jurisdiction and statutory authority to order it to bear the expense of that transfer.

Motion to revoke

The State next contends that the trial court erred in denying its motion to revoke Ward's LRA. A court may only grant an LRA if it meets statutory requirements. Skinner, 122 Wn. App. at 627. An LRA must identify a specific residence and include the housing provider's written agreement accepting the

committed person. RCW 71.09.092(3). See also Jones, 149 Wn. App. at 27 (discussing the specificity requirement).

Once granted, the State or the SCC may petition to revoke conditional release through RCW 71.09.098, discussed above. The statute prescribes a two-part process for a motion to revoke. First, the State must prove by a preponderance of the evidence that the committed person "(a) violated or is in violation of the terms and conditions of the court's conditional release order; or (b) is in need of additional care, monitoring, supervision, or treatment . . . ." RCW 71.09.098(1)(a). If the trial court determines that the State has met its initial burden, it must proceed to the second step, which involves considering five statutory factors to determine if continuing conditional release is in the person's best interest and adequate to protect the community. RCW 71.09.098(6)(a). These factors include the nature of the violation and the degree to which the violation was intentional. Id.

The State first argues that the trial court erred because it did not determine whether the State met its initial burden of proving that Ward violated the terms of his LRA. Alternatively, the State appears to argue that the trial court erred in determining that Ward did not violate the terms of his LRA. The State contends that it presented overwhelming evidence that Ward violated the terms of his conditional release order by failing to comply with the SCC's rules, failing to comply with instructions of SCC staff members, and not participating in treatment. Although Ward disputed the account of the alleged assault on the SCC staff member, the State notes that Ward provided no evidence supporting

an alternate theory. The State also asserts that it was undisputed that Ward no longer had permission to reside at the SCTF, and thus was no longer able to comply with the housing term of his conditional release order.

The trial court did not expressly state a finding on whether the State proved that Ward violated the terms of his LRA.[4] But in its written order, the trial court concluded as a matter of law that neither Ward's lack of housing nor his behaviors at the SCC constituted a violation of his conditions. The order explains that the lack of housing is not a violation of Ward's LRA because it "was a voluntary decision made by the superintendent." CP at 185. The order also states that Ward's "behavioral issues evidence mental health problems, more than sexual deviancy related acting out." CP at 184. The order states that the assault on the female staff member may be an exception, but the trial court could not adequately evaluate it because the State did not call the staff member as a witness.

The trial court's analysis of the issues presented by the State's revocation motion was flawed. The court appears to have conflated the issues of whether the violations occurred and if so, the nature and willfulness of the violations. It determined that Ward's behaviors were not violations because they resulted from his mental illness. This finding is inconsistent with the procedure set out in RCW 71.09.098. Under that statute, the trial court must first determine that a violation

---

[4] At hearing, the trial court stated it was denying the State's motion to revoke because it found that conditions at the SCC were inadequate and Ward's behavioral issues gave evidence of mental health problems. When the State asked for clarification as to whether the court had found that Ward was in violation of his conditions, the court stated that it was not "going to address that." VRP (7/11/16) at 42.

occurred and only then consider the nature and willfulness of the violation. RCW 71.09.098(6)(a). We conclude that the trial court abused its discretion because it utilized the wrong standard to resolve this issue. Littlefield, 133 Wn.2d at 47.

Next, the State asserts that the trial court failed to consider the factors required by RCW 71.09.098(6)(a). If the State is seeking revocation and meets its initial burden, the court must consider five statutory factors: (1) the nature of the violation, considered in the context of the person's criminal history and underlying mental condition; (2) the degree to which the violation was intentional; (3) the ability and willingness of the released person to comply with the terms of the LRA; (4) the degree of progress made at the LRA facility; and (5) the risk to the public of maintaining the person in less than total confinement. These factors are relevant to whether continuing the LRA is in the person's best interest and adequate to protect the community.

Ward asserts that the trial court properly weighed each statutory factor, just as the 2014 trial court did. He provides no citation supporting this assertion. The record gives evidence to the contrary. The conclusion that Ward's behaviors reflect his mental illness may be evidence that the trial court considered the first or the second factors, the nature of the violation and its willfulness. The record gives no evidence related to the other factors.

At the hearing on the State's motion to revoke, the State argued that Ward had violated the terms of his LRA, could not comply with the housing condition of his LRA, and was in need of more care and supervision than he could receive at the SCTF. Ward's counsel argued in response that, at the court's suggestion,

she had found alternative housing for Ward. Ward did not address the motion to revoke or any of the statutory factors. The only questions posed by the trial court concerned new housing for Ward. In its bench ruling, the trial court indicated that it was denying the State's motion because conditions at the SCC were inadequate and because the SCC was in contempt of the prior order.

The trial court's written order makes no mention of the statutory factors. The order finds that the State has failed to adequately treat Ward's underlying mental illness. It concludes that Aacres, rather than the SCC, is an appropriate placement for Ward. The trial court's letter explaining its denial of the State's motion for reconsideration does not address the State's motion to revoke and makes no mention of the statutory factors.

The procedure followed by the trial court in this case is in contrast to that followed by the court that heard the State's 2014 motion to dismiss. In Ward II, this court held that the 2014 trial court did not abuse its discretion in denying the State's motion to revoke Ward's LRA. Ward II, WL 4232058 at *7. We noted that the trial court "thoughtfully analyzed" each of the statutory factors. Id. at *5. In that case, the State made no claim of procedural irregularity. Id. at *6.

In this case, on the other hand, the record indicates that the trial court did not consider the State's motion to revoke as required by RCW 71.09.098. Because there is no evidence that the trial court considered the required factors, and because the reasons the trial court gave for denying the State's motion to revoke do not reflect those factors, we conclude that the trial court failed to follow the statutory procedure.

24

The trial court abused its discretion in denying the State's motion to revoke because its decision is based on a flawed legal analysis. We remand for a determination of (1) whether the State proved by a preponderance of the evidence that Ward violated the terms of his conditional release order or was in need of more care and supervision than the SCTF could provide; and (2) whether, in light of the statutory factors, continuing on his LRA is in Ward's best interest and adequate to protect the community. RCW 71.09.098.

Costs of appeal

The State requests costs of appeal under RAP 14.2. Under RAP 14.2, this court has discretion in determining if costs should be allowed to the substantially prevailing party. State v. Nolan, 141 Wn.2d 620, 626, 8 P.3d 300 (2000). Ward is statutorily indigent because he has been involuntarily committed. RCW 10.101.010(3)(b). He was committed as an SVP when he was nineteen years old and has spent more than twenty-five years housed on McNeil Island. We deny the State's request for costs.

*Reversed and remanded.*

WE CONCUR:

_____
Spearman, J.

_____
Mann, J.

_____
Schindler, J.

25