

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 0 3 2017
Fairhurst, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Aug 3, 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 92501-1 |
| | ) | |
| JOHN H. MARCUM. | ) | En Banc |
| | ) | |
| | ) | Filed    AUG 0 3 2017 |
| | ) | |
| | ) | |

MADSEN, J.—In this case, we apply a provision in chapter 71.09 RCW, the statute governing the civil commitment of sexually violent predators (SVP), in the context of a detainee's petition for unconditional release. While the parties argue competing interpretations concerning how a detainee's treatment-based change is to be assessed, we resolve this case on the threshold issue concerning the burden placed on the State by chapter 71.09 RCW at the ensuing show cause hearing.[1] Because the State here failed to meet its threshold burden at the show cause hearing as set forth in RCW 71.09.090(2)(b) (discussed below), we reverse the Court of Appeals and hold that detainee John Marcum is entitled to a full evidentiary hearing.

---

[1] The detainee, John Marcum, filed a petition for unconditional release, arguing that he is entitled to a hearing because he has presented evidence of treatment-based change since his initial commitment some 16 years ago. The State argues that Marcum is not entitled to a hearing unless he can demonstrate treatment-based change occurring since the revocation of his less restrictive alternative placement, which occurred some six years ago. We do not address these arguments as resolution of the noted threshold issue is dispositive. *See State v. Slert*, 186 Wn.2d 869, 880, 383 P.3d 466 (2016) ("this court has authority to reach any issue necessary to a just disposition"); *Jenkins v. Dep't of Soc. & Health Servs.*, 160 Wn.2d 287, 291, 157 P.3d 388 (2007) (where issue decided is dispositive, it is "unnecessary to reach or decide any other issues").

FACTS

Marcum has been civilly committed as an SVP for more than 15 years. In 1989, Marcum was convicted of one count of indecent liberties against a child under the age of 14 and two counts of first degree child molestation. While he was on community placement for those offenses, Marcum committed second degree child molestation. He was convicted of that offense in 1994 and sentenced to 89 months of incarceration. Just before his scheduled release in January 2000, the State petitioned to have Marcum civilly committed as an SVP.

Marcum stipulated to commitment as an SVP in January 2001. He resided at the Special Commitment Center (SCC), where he participated in sexual deviancy treatment. In January 2009, he was transferred to a less restrictive alternative (LRA) at the Pierce County Secure Community Transition Facility (transition facility or SCTF), where he remained for approximately two years.

At the transition facility, Marcum battled depression and his behavior deteriorated, although not in a way directly related to sexual offending.[2] Marcum consistently participated in sex offender treatment, but he refused to work (objecting that wages were too low or that he could do only sedentary jobs), developed a habit of lying in bed until late in the day, refused to exercise, and traded stamps for cigarettes in violation of transition facility rules.[3] Because of these behaviors, Marcum's treating psychologist,

_____

[2] The dissent takes issue with our characterization of Marcum's time at the SCTF, *see* dissent at 4, but this assessment reflects the view of the State's evaluator. *See infra* note 4.

[3] Marcum told an evaluator that he stopped taking his prescribed antidepressant medication at the transition facility because after his dosage was increased, the side effects became intolerable.

Dr. Vincent Gollogly, determined that he could no longer provide Marcum with sex offender treatment therapy. Accordingly, the Department of Corrections submitted a recommendation to the superior court that Marcum's LRA release be revoked. The reasons given all pertained to Marcum's refusal to work and generally negative attitude, and not to any sexual misconduct.

In May 2011, Marcum stipulated to the revocation of his LRA release. The court granted the revocation on the ground that the LRA placement was conditioned on Marcum's participating in treatment with Dr. Gollogly, and since Dr. Gollogly was no longer willing to treat Marcum, this condition could not be satisfied. After returning to total confinement at the SCC, Marcum did not participate in further sexual offender treatment.

One year later, the superior court entered an "Agreed Order on Annual Review." Clerk's Papers (CP) at 13. The order found that Marcum continued to meet the definition of an SVP and that any LRA placement was not appropriate. However, it also contained a provision noting that "Respondent did not present his own evidence at this time" and that "entry of this order does not prevent him from obtaining such evidence in the future or from petitioning the court, at any time, for conditional or unconditional release." *Id.* at 14.

Petition for an Unconditional Release Trial

In August 2013, Marcum filed a "Petition For An Unconditional Release Trial Pursuant To RCW 71.09.090 Annual Review Hearing." *Id.* at 29. He attached a report by Dr. Paul Spizman, a former SCC employee. Dr. Spizman's evaluation reviewed in

3

detail Marcum's history of treatment, including the two years he spent at the transition facility, and the evolution in his sexual thinking and behavior. Regarding Marcum's experience at the transition facility, Dr. Spizman noted that while Marcum "may have fallen back into some negative behaviors[,] . . . he did not actually fall back into the use of sexualized coping . . . [and] it appears he is able to effectively manage himself well enough to avoid the stepping back into the sexual elements of his offending cycle." *Id.* at 71. Because of the gains Marcum made in treatment over his many years in civil commitment, Dr. Spizman concluded that he was no longer diagnosable as having pedophilia and no longer met the definition of an SVP.

In response, the State's relied on the annual report (dated April 15, 2013) of its evaluator, Dr. Regina Harrington. The annual report concluded that Marcum "continues to meet the definition of a[n] [SVP and] . . . continues to [be] suitable for a [LRA] community placement," and also acknowledged that Marcum "has reached [the] maximum benefit from inpatient treatment." *Id.* at 24, 23.[4] Dr. Harrington's evaluation also described changes in Marcum's attitude about release since his previous annual

---

[4] Dr. Harrington's evaluation addressed Marcum's experience at the Pierce County LRA as follows:

> During that LRA placement Mr. Marcum demonstrated commitment and motivation to live a prosocial life and an ability to be organized and independent in managing aspects of his life to the extent permitted. Mr. Marcum did not experience a recurrence of sexually deviant impulses or thoughts however, he was not able to develop financial resources to progress to a lesser restrictive setting to further test and strengthen risk management skills and at that time it . . . seems he did not optimize his use of available opportunities. Thus, *based on circumstances not related to concern or deterioration in sexual regulation,* he was returned to the total confinement facility in 2011 where he continues to reside.

CP at 17 (emphasis added).

4

review. The evaluation contained a detailed description of Marcum's release plan, which included plans for work, minimal and supervised contact with the two children in Marcum's extended family (a niece and nephew), and participation in Alcoholics Anonymous and sex offender counseling.[5]

At the show cause hearing addressing Marcum's petition for release, the State first contended that it met its threshold burden by showing that Marcum continued to be an SVP as supported by Dr. Harrington's evaluation. The State contended that based on the SVP showing *alone*, the State had met its statutory burden. The State then addressed Marcum's probable cause argument, which was based on Dr. Spizman's evaluation. The State did not challenge the factual basis for any conclusion in Dr. Spizman's evaluation. Instead, it argued only that those conclusions were irrelevant because they all pertained to changes in Marcum's mental condition that occurred before his LRA revocation. In other words, the State argued that Dr. Spizman failed to address whether Marcum's condition had changed through treatment *after* Marcum's LRA revocation.

Marcum's attorney initially argued that the State had not met its prima facie showing. Alternatively, she contended that the State's position concerning Marcum's probable cause showing was absurd and constitutionally problematic because Marcum had taken all of the treatment courses that the SCC offered, he had received maximum

---

[5] Unlike the previous year, Marcum had developed a concrete plan for release built on the support of family resources in Wisconsin, which involved residing independently in a trailer on a 1.5 acre tract of land where his brother and family live.

benefits as acknowledged by the State's evaluators, and the benefits of such treatments showed in Marcum's daily life.

The trial court ultimately agreed with the State and denied Marcum's petition for a trial, noting in part that Marcum could not show changed mental condition "through positive response to continuing participation in treatment" because he had not engaged in treatment for two years. *Id.* at 76-77.

## Court of Appeals Decision

Marcum appealed, arguing that the superior court's denial of a release trial violated both statutory and constitutional protections. The State argued, as it had in the trial court, that Marcum could not meet a statutory prerequisite to release under RCW 71.09.090(4)—change through continuing participation in treatment—because he had not participated in treatment since he stipulated to the revocation of his LRA placement.

The Court of Appeals affirmed the superior court in a divided opinion, concluding that under RCW 71.09.090(4)(a), a detainee cannot obtain an evidentiary hearing unless he can show that he has changed *since* the last proceeding resulting in civil commitment. *In re Det. of Marcum*, 190 Wn. App. 599, 601-02, 605-06, 360 P.3d 888 (2015). Marcum sought review, which this court granted. *In re Det. of Marcum*, 185 Wn.2d 1010, 367 P.3d 1083 (2016).

## ANALYSIS

We review questions of statutory interpretation de novo. *In re Det. of Hawkins*, 169 Wn.2d 796, 800, 238 P.3d 1175 (2010). And, as we have previously held, "[S]tatutes that involve a deprivation of liberty must be strictly construed." *Id.* at 801; *see also In re*

6

*Det. of Martin*, 163 Wn.2d 501, 508, 182 P.3d 951 (2008) (we strictly construe statutes curtailing civil liberties). "As civil commitment is a 'massive curtailment of liberty,' we must narrowly construe the [civil commitment statutes]." *Hawkins*, 169 Wn.2d at 801 (citation omitted) (quoting *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972)). Accordingly, we hold that granting civilly committed detainee Marcum a full trial is required by RCW 71.09.090. This is because the State failed to make the initial prima facie showing imposed on it at the show cause hearing. The State's burden is expressly set forth in RCW 71.09.090(2)(b). Based on this failure alone, the detainee must be granted a full hearing.

RCW 71.09.090(2)(b) provides in relevant part:

> At the show cause hearing, the prosecuting agency shall present prima facie evidence establishing that the committed person continues to meet the definition of a sexually violent predator *and* that a less restrictive alternative is not in the best interest of the person and conditions cannot be imposed that adequately protect the community. In making this showing, the state may rely exclusively upon the annual report prepared pursuant to RCW 71.09.070.

(Emphasis added.) Concerning the show cause hearing requirements in this context, this court has explained:

> The purpose of the show cause hearing is to determine whether the individual is entitled to an evidentiary hearing. [RCW 71.09.090(2)(a).] At the show cause hearing, the State bears the burden to present prima facie evidence that the individual continues to meet the definition of an SVP *and* that conditional release to a less restrictive alternative would be inappropriate. RCW 71.09.090(2)(b). The court *must* order an evidentiary hearing *if the State fails to meet its burden* or, alternatively, the individual establishes probable cause to believe his "condition has so changed" that he no longer meets the definition of an SVP or that conditional release to a less restrictive alternative would be appropriate. RCW 71.09.090(1).

*State v. McCuistion*, 174 Wn.2d 369, 380, 275 P.3d 1092 (2012) (emphasis added).

Restated, the State's prima facie burden at the show cause hearing is twofold. It *must* show that the detainee is still a sexually violent predator *and* that conditional release to a less restrictive alternative is not appropriate. If the State fails to make this two-prong showing a full hearing is required.[6] Further, as noted above, in making the required showing the State may rely solely on the annual report, and here it did so.

As noted, the State relied on the April 15, 2013 Special Commitment Center Annual Review (2013 report) conducted by evaluator Dr. Regina Harrington. The 2013 report stated:

> [T]he purpose of this report is to evaluate whether Mr. Marcum's condition has changed to the extent he no longer meets the definition of a Sexually Violent Predator or whether conditional release to a less restrictive alternative (LRA) is in his best interest and conditions could be imposed to adequately protect the community. Therefore this annual examination assesses his current functioning, significant treatment progress and change, and readiness for a less restrictive or unconditional community placement, rather than gathering historical information already presented in previous Court proceedings.

CP at 16. After discussing Marcum's progress, the 2013 report states:

> It continues to be the opinion of this evaluator Mr. Marcum has reached maximum benefit from inpatient treatment and *a higher management setting is not in his best interest* as it does not further his adaption to community life and does not appear necessary for community safety. . . . [I]n the opinion of this evaluator, *it would be preferable to facilitate a conditional release* optimizing opportunity for independent living with supervision and treatment to support risk management and likelihood of a successful community transition for Mr. Marcum.

---

[6] The dissent would hold that Marcum is not entitled to a full hearing because "Marcum did not establish probable cause." Dissent at 10. But, as discussed, the threshold burden at the show cause hearing is on the State.

*Id.* at 23 (emphasis added). The "higher management setting" referenced in the above passage clearly refers to the Special Commitment Center, at which Marcum is now detained. The 2013 report concludes by observing:

> [Marcum's] civil commitment, according to [RCW] 71.09.060, was to continue . . . until his condition has changed such that he no longer meets the definition of a sexually violent predator *or* conditional release to a less restrictive alternative is in his best interest. . . .
>
> It is my professional opinion Mr. Marcum continues to meet the definition of a sexually violent predator. . . . However, it is my professional opinion he continues to [be] suitable for a less restrictive alternative community placement and a higher management total confinement setting is not in his best interest and is not needed for community safety.

*Id.* at 24 (emphasis added).

As can be seen, while the State's evidence does make the required first prong prima facie showing of continuing status as a sexually violent predator, it fails the second prong showing—that conditional release to a less restrictive alternative would *not* be appropriate. The State's proffered evidence, the 2013 report, shows just the opposite. Because the State has failed to make the requisite two-pronged threshold showing at the show cause hearing, the court was required to order a full trial. *McCuistion*, 174 Wn.2d at 380.[7]

---

[7] As discussed above, evidence of Marcum's continuing status as a sexually violent predator is only half of the prima facie showing that RCW 71.09.090(2)(b) charges the State with producing at a show cause hearing. The fact that the detainee here initiated this proceeding by seeking an unconditional release does not relieve the State of its threshold burden at the show cause hearing or make the option of a less restrictive alternative placement a nonissue. The dissent asserts that a full hearing in this circumstance—where Marcum seeks unconditional release—"would lead to absurd . . . results." Dissent at 13. Not so. As explained, a full hearing here is required under *McCuistion* and that hearing will determine whether Marcum is entitled to unconditional release (as he asserts) and will also satisfy the due process requirement of any further detention. "Under the due process clause of the Fourteenth Amendment, an individual subject to civil commitment

CONCLUSION

We reiterate our holding in *McCuistion* concerning the State's threshold burden at a show cause hearing concerning a civilly committed detainee. The purpose of the show cause hearing is to determine whether the detainee is entitled to an evidentiary hearing. Under RCW 71.09.090(2)(b), the State bears the burden at the show cause hearing to present prima facie evidence that the detainee continues to meet the definition of a sexually violent predator *and* that conditional release to a less restrictive alternative would be inappropriate. If the State fails to meet this threshold burden, the court *must* order an evidentiary hearing. Here, the State did not meet its burden and the court did not order the required hearing. Those failings are determinative of this case. We reverse the Court of Appeals and remand for further proceedings consistent with this opinion.

---

is entitled to release upon a showing that he is no longer mentally ill or dangerous." 174 Wn.2d at 384 (citing U.S. CONST. amend. XIV; *Foucha v. Louisiana*, 504 U.S. 71, 77-78, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992)). Substantive due process requires the State to "conduct periodic review of the patient's suitability for release." *Id.* at 385 (citing *Jones v. United States*, 463 U.S. 354, 368, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983)). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972); *see McCuistion*, 174 Wn.2d at 388.

10

No. 92501-1

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Wiggins, J._

_Stephens, J._

11

No. 92501-1

GORDON McCLOUD, J. (concurring)—I agree with the majority that John Marcum is entitled to a full hearing on his petition for unconditional release. I write separately, however, because I do not agree with the majority's interpretation of the sexually violent predator (SVP) commitment statutes, chapter 71.09 RCW, at issue here. The majority holds that Marcum is entitled to a hearing on *unconditional* release because the State's evidence supported *conditional* release to a less restrictive alternative (LRA) placement. But this approach is illogical, conflicts with the statute's plain language, and avoids the question squarely presented in this case: whether Marcum's evidence demonstrated the kind of treatment-based change that entitles a petitioner to a hearing on unconditional release. I would reach that question, and I would hold that the answer is yes.

The SVP commitment statute at issue here is ambiguous and must therefore be construed so as to avoid a due process violation. U.S. CONST. amend. XIV. Here, that means construing the statute to require a full hearing at which the State bears the burden to justify continued civil commitment when an individual presents

1

credible evidence of treatment-based change making him or her safe for release to the community. Consistent with substantive due process protections, with the canon of constitutional avoidance, and with the rule that our SVP commitment statutes must be strictly construed in favor of liberty, I conclude that Marcum is entitled to a full evidentiary hearing on his petition for release. *Foucha v. Louisiana*, 504 U.S. 71, 77, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (due process requirements); *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434-35, 341 P.3d 953 (2015) (canon of constitutional avoidance); *In re Det. of Hawkins*, 169 Wn.2d 796, 801, 238 P.3d 1175 (2010) (strict construction requirement (citing *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007))). I therefore concur in the majority's decision to reverse the Court of Appeals and remand for a full hearing on unconditional release.

## FACTS

As the dissent notes, Marcum has committed numerous sexual offenses against young boys. He has been convicted of four such offenses arising from three separate incidents, but has admitted to victimizing 21 children over a five-year period beginning when Marcum was 23 years old. Marcum's last conviction occurred in 1994 and resulted in a sentence of 89 months of incarceration. Just before his scheduled release date in January 2000, the State successfully petitioned

2

to have Marcum civilly committed to the Special Commitment Center (SCC) as an SVP. Thus, at this point Marcum has been civilly committed as an SVP for more than 16 years.

In May 2011, after he stopped taking his prescribed antidepressant medication and his behavior deteriorated sharply, Marcum stipulated to the revocation of his LRA placement. Marcum's attorney attached a "Certificate" to the stipulation motion stating that "Mr. Marcum's attitude towards his current placement has deteriorated to the point where nothing will change his mind including changing treatment providers and/or changing current placements. Mr. Marcum had directed this writer to report to the Court that he wishes to be revoked." Clerk's Papers (CP) at 131 (boldface omitted). The Certificate also noted Marcum's request "that this matter be set for hearing and/or trial on the issue of unconditional release at a later date." *Id.* at 132.

Contrary to the assertion in the dissent,[1] this stipulation did not result in any finding or conclusion that Marcum continued to meet the definition of an SVP. Instead, the court order revoking Marcum's LRA placement just noted the uncontested fact that Marcum was, at the time of the revocation order, "civilly committed as a[n] . . . SVP." *Id.* at 133. One year later, the superior court entered

---

[1] Dissent at 16-17.

an "Agreed Order on Annual Review." *Id.* at 13. This order stated that Marcum continued to meet the definition of an SVP—a prerequisite to civil commitment as a sex offender. But the order also contained a provision stating that Marcum "did not present his own evidence at this time" and that "entry of this order does not prevent him from obtaining such evidence in the future or from petitioning the court, at any time, for conditional or unconditional release." *Id.* at 14.

Marcum invoked that provision roughly one year later, in August 2013, when he petitioned the court for a trial on unconditional release. This time, he submitted his own expert evaluation opining that due to his successful participation in sex offender treatment, Marcum no longer fit the definition of an SVP. Thus, there was conflicting evidence before the court as to whether Marcum actually continued to "suffer[] from a mental abnormality or personality disorder which makes [him] likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). If he does not meet those criteria, then the State may not civilly commit him. *See In re Det. of Thorell*, 149 Wn.2d 724, 731-32, 72 P.3d 708 (2003) (citing *Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002) (SVP statute satisfies due process only if commitment is predicated on proof of mental illness and dangerousness)); RCW 71.09.060(1).

ANALYSIS

The State contends that Marcum's expert evaluation doesn't matter. It argues that RCW 71.09.090(4)(a) bars the trial court from granting an evidentiary hearing on a petition for unconditional release unless the petitioner presents evidence of treatment-based change since the *later* of two proceedings: either the last commitment trial or the last LRA revocation proceeding. Thus, the State concludes that Marcum's expert evaluation was irrelevant—even though it opined that he was no longer an SVP—because it identified treatment-based changes that all occurred *before* Marcum's LRA revocation (the most recent proceeding). Marcum disagrees; he argues that his expert declaration demonstrates exactly the kind of treatment-based change required to trigger an evidentiary hearing on unconditional release.

The majority declines to reach this question[2] and instead holds that Marcum is entitled to an evidentiary hearing on unconditional release[3] because the State considers him eligible for conditional release to an LRA. I agree with the dissent that this approach is untenable, both because it depends on an incomplete reading of the SVP commitment statute and because it ignores the question framed by the parties and the Court of Appeals. Dissent at 1-2, 9, 12-13.

---

[2] Majority at 1 n.1.

[3] Majority at 9 n.7.

But I respectfully disagree with the rest of the analysis in the dissent. That analysis can result in the continued civil commitment of a person who, thanks to participation in sex offender treatment, is no longer both mentally ill and dangerous. That unconstitutional outcome is inconsistent with the SVP commitment statutes at issue here; indeed, it is the very outcome those statutes were designed to prevent. *Thorell*, 149 Wn.2d at 731-32 (citing *Crane*, 534 U.S. at 413); U.S. CONST. amend. XIV.

I.    The Statutory Provision at Issue In This Case, RCW 71.09.090(4)(a), Is Ambiguous; We Must Therefore Interpret It According to Relevant Canons of Statutory Construction

RCW 71.09.090(4)(a) defines the "probable cause" necessary to trigger a full evidentiary hearing on an SVP detainee's petition for release. It provides that a full hearing is required "when evidence exists, since the person's last commitment trial, or [LRA] revocation proceeding, of a substantial change in the person's physical or mental condition . . . ." RCW 71.09.090(4)(a). Thus, RCW 71.09.090(4)(a) gives two dates from which a petitioner's treatment-based change can be measured—the date of the petitioner's last commitment trial and the date of the petitioner's last LRA revocation proceeding (if any occurred)—but it does not explain how to determine which date applies in any given case.

As noted above, the majority has declined to answer that question. It holds that because the State's evidence at the show cause hearing indicated that an LRA placement was appropriate, Marcum is entitled to a "full trial." Majority at 9. The majority acknowledges that Marcum neither sought nor proposed an LRA placement but concludes that this is irrelevant: "The fact that the detainee here . . . [sought] an unconditional release does not . . . *make the option of an LRA a nonissue.*" Majority at 9 n.7 (emphasis added). This conclusion conflicts with the plain language of the SVP commitment statute, which—as the dissent points out—prohibits the trial court from granting a trial on LRA release unless "'a proposed [LRA] placement meeting the conditions of RCW 71.09.092 is presented to the court at the show cause hearing.'" Dissent at 12 (quoting RCW 71.09.090(2)(d)). In this case, nobody presented an adequate LRA proposal at the show cause hearing. Contrary to the majority's reasoning, that makes release to another LRA placement a "nonissue" (not grounds for an evidentiary hearing). Majority at 9 n.7.

I do agree with the majority's holding, however, that Marcum is entitled to an evidentiary hearing on *unconditional* release. I agree with that holding because I conclude that the "change" triggering such a hearing under RCW 71.09.090(4)(a) must be interpreted to include change occurring before Marcum's LRA revocation.

7

The State, the Court of Appeals majority, and the dissent disagree: they all conclude that under RCW 71.09.090(4)(a), the requisite change must have occurred *since* the stipulated LRA revocation. *In re Det. of Marcum*, 190 Wn. App. 599, 604-05, 360 P.3d 888 (2015), *review granted*, 185 Wn.2d 1010, 367 P.3d 1083 (2016). They all assert, but without any satisfactory explanation, that the statute is plain and unambiguous on this requirement. *Id.*[4]

Marcum and Judge Fearing, who dissented in the Court of Appeals, contend that the date from which change must be measured depends on the nature of the release sought. *Id.* at 607 (Fearing, J., dissenting). Under their interpretation, a

---

[4] The dissent concludes that RCW 71.09.090(4)(a) is unambiguous because it "specifically refers to the 'last' proceeding and includes both commitment trials and LRA revocations as possible reference points." Dissent at 15. But that begs the question presented in this case: When must the court measure change since the last commitment trial, and when must it measure change since the last LRA proceeding? The State just asserts, in conclusory fashion, that the disputed phrase "since the . . . last commitment trial, or [LRA] revocation proceeding" is "plain and unambiguous." Suppl. Br. of Resp't State of Wash. at 9. This is unpersuasive because it essentially rewrites that provision, changing the conjunction "or" to "and." And the Court of Appeals majority employed flawed reasoning to conclude that the statute was unambiguous. It asserted that Marcum's interpretation could not stand because it "effectively reads the LRA language . . . out of the statute . . . because any LRA revocation is always going to be later in time . . . ." *Marcum*, 190 Wn. App. at 604. Presumably, the majority meant that a petitioner would always choose the earlier of the two possible dates from which to measure change, since this would increase the range of relevant evidence. But, at best, this reasoning explains only why we should not interpret the statute to grant petitioners an unlimited choice between the two possible dates. It does not explain why we should decide that the choice is limited by chronology as opposed to something else—for example, as in Marcum's interpretation, the nature of the disputed issues.

petitioner seeking *unconditional* release must show change since his last *commitment trial*, but a petitioner seeking the reinstatement of an *LRA* placement must show change since his last *LRA revocation*. *Id.* They find RCW 71.09.090(4)(a)'s plain terms ambiguous but maintain that the statute makes sense only if it requires this "comparison between apples and apples." *Id.* at 623, 626-27 (Fearing, J., dissenting) ("When determining whether the detainee should no longer be confined, a court should measure change since before he was confined, or at least since his last commitment trial. His progress since a[n] [LRA] revocation hearing is immaterial in determining whether he can live in the community without endangering others.").

I agree with Marcum and Judge Fearing that RCW 71.09.090(4)(a) is ambiguous. It is impossible to tell from the statute's plain terms, or from related provisions,[5] when a trial court should measure change from the petitioner's last commitment trial and when it should measure change from the petitioner's last LRA revocation proceeding. I therefore conclude that the only way to resolve this case is to apply relevant canons of statutory construction. *Jongeward v. BNSF Ry.*, 174

---

[5] *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012) ("Plain meaning may be gleaned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002))).

Wn.2d 586, 600, 278 P.3d 157 (2012) ("[i]f a statute remains ambiguous after a plain meaning analysis, it is appropriate to resort to interpretive aids, including canons of construction and case law" (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002)).[6]

Three canons of statutory construction are relevant to this case. First, we assume that the legislature does not intend absurd results. *State v. Ervin*, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010) (citing *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983)). Second, we construe ambiguous statutes to avoid constitutional questions wherever possible. *Utter*, 182 Wn.2d at 434-35. Third, we construe chapter 71.09 RCW strictly against the State (and in favor of the detainee) because

---

[6] When interpreting civil statutes, we may also consult the legislative history to resolve ambiguities. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 709, 153 P.3d 846 (2007). But there is no helpful legislative history in this case. The dissent discusses *In re Detention of Jones*, 149 Wn. App. 16, 30, 201 P.3d 1066 (2009), arguing that when the legislature amended RCW 71.09.090(4)(a) in 2009, it intended to overrule *Jones*'s holding that a detainee petitioning for release need show change occurring only since his initial commitment trial, and not since his latest LRA revocation proceeding. Dissent at 21-22. (citing FINAL B. REP. ON SUBSTITUTE S.B. 5178, 61st Leg., Reg. Sess. (Wash. 2009)). But even assuming that this is correct—something we cannot determine from the legislative record—the petitioner in *Jones* was seeking *conditional release to an LRA. Id.* at 21. Thus, if the 2009 amendments were intended to force such petitioners to show change occurring since their LRA revocation hearing, this is consistent with Marcum's and Judge Fearing's interpretation of RCW 71.09.090(4)(a). *See Marcum*, 190 Wn. App. at 626 (Fearing, J., dissenting) (arguing for an "apples and apples" interpretation, according to which a petitioner seeking the reinstatement of an LRA must show change since the revocation of that LRA, but a petitioner seeking unconditional release must show change occurring only since his commitment trial).

it implicates fundamental liberty interests. *In re Det. of Martin*, 163 Wn.2d 501, 508, 182 P.3d 951 (2008) (citing *In re Det. of Swanson*, 115 Wn.2d 21, 31, 804 P.2d 1 (1990)).

II.   Every Possible Interpretation of RCW 71.09.090's Plain Language Results in Some Absurdity; Therefore, We Should Apply the Statute in the Manner That Avoids a Due Process Violation

As noted above, Marcum and Judge Fearing argue that the "change" period applicable under RCW 71.09.090(4)(a) depends on the nature of the change in custody status the petitioner seeks. They contend that RCW 71.09.090(4)(a) permits a hearing on LRA release if the petitioner shows "change" since the last LRA revocation proceeding—where the court must have concluded that LRA placement was not appropriate—and a hearing on unconditional release if the petitioner shows "change" since the last commitment trial—where the court must have concluded that the petitioner was an SVP (meeting both the mental illness and dangerousness prerequisites to civil commitment).

This interpretation makes sense at first glance because since LRA placements may be revoked for a multitude of reasons that have nothing to do with a detainee's SVP status, the issues resolved in an LRA revocation proceeding are different from the issues resolved in a commitment trial. *See In re Det. of Jones*, 149 Wn. App. 16, 30 & n.28, 201 P.3d 1066 (2009) (distinguishing between the appropriateness of an

11

LRA placement, which is at issue in an LRA revocation hearing, and a detainee's "SVP commitment status," which is not (citing *In re Det. of Bergen*, 146 Wn. App. 515, 523, 533, 195 P.3d 529 (2008))); *see also Marcum*, 190 Wn. App. at 626 (Fearing, J., dissenting) (arguing that that the State's interpretation of RCW 71.09.090(4) requires an apples-to-oranges comparison).

But the problem with Marcum's interpretation is that another statutory provision, RCW 71.09.090(4)(b), prohibits the court from ordering any new trial *at all*—whether on LRA placement or total release—unless the petitioner shows either of two kinds of "change":

> (i) An identified physiological change to the person, such as paralysis, stroke, or dementia, that renders the committed person unable to commit a sexually violent act and this change is permanent; or

> (ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release to a[n] [LRA] or that the person would be safe to be at large if unconditionally released from commitment.

RCW 71.09.090(4)(b)(i), (ii).

Under this provision, the "change" required for a full evidentiary hearing is the same whether the petitioner seeks an LRA placement or total release: it must be either a debilitating physiological change or a mental change "brought about through positive response to continuing participation in treatment." RCW 71.09.090(4)(a),

12

(b)(ii). If an LRA were revoked because of some failed condition that had nothing to do with the offender's response to treatment—let's say, the loss of an approved residence—then these prerequisites to the LRA's reinstatement are absurd. Marcum's interpretation of the statute does not solve this problem—it just makes it irrelevant in this case, where Marcum seeks unconditional release instead of LRA reinstatement.

But the interpretation that the State and the dissent advance is also untenable. Their interpretation fails to resolve a contradiction between RCW 71.09.090(4)(a) and (b). These two subsections erect different barriers to obtaining a release trial. RCW 71.09.090(4)(a) provides that there can be no trial on release unless there is evidence of change since the last commitment trial *or* LRA revocation proceeding. By contrast, subsection (b) makes no mention of an LRA revocation proceeding at all; it just provides that no evidentiary hearing or trial may be held on any type of release unless there is expert testimony identifying change since the last commitment trial. Attempting to reconcile these provisions, the State argues that Marcum was required to show evidence of change since his LRA revocation in order to *obtain* a new release trial (under subsection (a)), but that thereafter—at the actual release trial *itself*—Marcum would be required to show change only since his last commitment trial (under subsection (b)). In other words, the State contends that Dr. Paul

Spizman's evaluation—which concludes that Marcum accomplished the requisite treatment-based change *before* his LRA revocation—would be enough for Marcum to *prevail* at a release trial but is not sufficient to *get* him to that trial in the first place. This doesn't make sense.[7]

Ultimately, it is not possible to completely resolve RCW 71.09.090(4)'s contradictions; every literal reading of the statute results in some absurdity. Thus, our only option is to apply the statute in the manner that avoids both absurdities and constitutional concerns. *See In re Dependency of D.L.B.*, 186 Wn.2d 103, 119, 376 P.3d 1099 (2016) (court will disregard unambiguous statutory language if necessary to avoid an absurd result (citing *State v. McDougal*, 120 Wn.2d 334, 351-52, 841 P.2d 1232 (1992))); *Utter*, 182 Wn.2d at 434-35 (court will construe ambiguous statute so as to avoid constitutional questions). The outcome that Marcum seeks— whereby Dr. Spizman's evaluation is sufficient to get him a full hearing on unconditional release—is the only application of the statute that meets that standard.

---

[7] The dissent speculates that because RCW 71.09.090(4)(b) specifically makes *expert* testimony a prerequisite to a release trial, this statute was probably intended to limit, rather than expand, the probable cause threshold for a full evidentiary hearing. Dissent at 15. But the dissent also acknowledges that the discrepancy between RCW 71.09.090(4)(a) and (4)(b) creates "possible confusion." *Id.* at 20.

14

III. The State's and the Dissent's Interpretations of RCW 71.09.090(4)(a) Violate the Canon of Constitutional Avoidance and The Rule That We Must Construe Ambiguous Civil Commitment Statutes in Favor of Liberty

Substantive due process protections require that any civil commitment scheme be narrowly tailored to serve compelling state interests. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 26, 857 P.2d 989 (1993). This requirement is satisfied only where "both initial and continued confinement are predicated on the individual's mental abnormality and dangerousness." *State v. McCuistion*, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012) (collecting United State Supreme Court cases). Accordingly, this court has already ruled that certain features of chapter 71.09 RCW, the SVP civil commitment statute, are constitutionally required. These include the statute's provisions for periodic review[8] and its requirement that the State bear the burden of proof on commitment criteria, both at the initial commitment trial and at any subsequent show cause hearing under RCW 71.09.090.[9] These features are

---

[8] *McCuistion*, 174 Wn.2d at 384-85 (citing *Jones v. United States*, 463 U.S. 354, 368, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983)).

[9] *In re Det. of Petersen*, 145 Wn.2d 789, 796, 42 P.3d 952 (2002) ("'[B]oth this court and the United States Supreme Court agree that the State must bear the burden of proof in involuntary civil commitment hearings, and, therefore, the trial court was correct in determining that due process requires that the burden of proof remain upon the State in the show cause hearing." (alteration in original) (quoting *In re Det. of Turay*, 139 Wn.2d 379, 424, 986 P.2d 790 (1999))).

constitutionally required because they are necessary to ensure that an individual can always obtain release if he shows that he is no longer *both* mentally ill and dangerous. *Id.* at 384-85.

Pursuant to the release petition provisions in RCW 71.09.090(2), Marcum presented an expert psychological evaluation stating that he no longer meets the definition of an SVP. CP at 58. The State argues that the court must ignore this evidence because—*even if it is true that Marcum no longer meets the definition of an SVP*—this change in his condition occurred too early in his civil commitment to be relevant now. In other words, the State argues that it may continue to confine Marcum, even if he no longer meets the constitutional criteria for civil commitment, because he waited too long to try to prove that his treatment succeeded.

The dissent agrees with the State and concludes that this outcome poses no constitutional concerns under this court's decision in *McCuistion*. Dissent at 16-19. According to the dissent, *McCuistion* held that the right of a civilly committed person to petition for release is purely statutory and therefore cannot implicate substantive due process protections. *Id.* (citing *McCuistion*, 174 Wn.2d at 385).

This is incorrect. In *McCuistion*, this court rejected a constitutional challenge to RCW 71.09.090(4)'s change requirement, holding that "[r]equiring change as a prerequisite for an evidentiary hearing . . . does not offend substantive due process

16

principles." 174 Wn.2d at 384. It reasoned that a petition for release without any showing of "'change'" *at all* was just a collateral attack on the fact finder's initial determination that the petitioner was an SVP. *Id.* at 386. And it concluded that such a collateral attack must be brought in a personal restraint petition rather than a petition for release under the SVP statute. *Id.* at 386 & n.6. In reaching that conclusion, the *McCuistion* majority asserted, in dictum, that "[h]ad McCuistion established probable cause to believe he had 'so changed' under the requirements of the [SVP release petition] statute, he would have had a statutory right, not a constitutional right, to a full evidentiary hearing." *Id.* at 386. But, since McCuistion presented no evidence of change at all, that question was not before the court. *Id.* at 374 ("In support of his petition for release, Mr. McCuistion submitted a declaration from an expert stating that he had never qualified as an SVP.").[10]

The *McCuistion* court also rejected McCuistion's *facial* challenge to the "change" prerequisite, explaining that substantive due process is *facially* satisfied by two other features of the SVP commitment statute: (1) the State's burden to prove

---

[10] Moreover, as authority for its conclusion that the right to a release hearing is purely statutory, the *McCuistion* majority cited only one case, *Jones*, 463 U.S. at 368. But *Jones* does not stand for that principle. *Jones* addressed a different issue: whether an insanity acquittee can be civilly committed for a term longer than the maximum sentence for his or her crime. *Id.* It held that the answer is yes, but only if he or she *remains* mentally ill and dangerous. *Id.*

beyond a reasonable doubt that a person is mentally ill and dangerous before committing that person in the first place and (2) the requirement that the State "justify continued incarceration through an annual review." *Id.* at 388-89 (rejecting McCuistion's facial challenge because it "assumes that the annual review process fails to properly identify those who are no longer mentally ill and dangerous").

By rejecting this facial due process challenge, the *McCuistion* court did not hold that there are absolutely no constitutional dimensions to the SVP release petition process. Instead, it held only that the particular petition before it failed to show any *actual* violation of substantive due process protections.[11] Marcum's petition, by contrast, demonstrates a clear constitutional problem with RCW 71.09.090(4)(a): if interpreted as the State and dissent urge, this statute can result in the continued confinement of an individual who is not both mentally ill and dangerous.

This result conflicts with numerous constitutional holdings on civil commitment under chapter 71.09 RCW—the holdings that continued civil commitment must be predicated on mental illness and dangerousness; that annual

---

[11] *McCuistion*, 174 Wn.2d at 386 (due process does not require that detainee be permitted to collaterally attack his original civil commitment in petition for release as opposed to personal restraint petition; thus, "change" prerequisite to release trial is constitutional), 392 ("Mr. McCuistion fails to establish that individuals may cease to be mentally ill or dangerous without treatment or physiological change").

review must be afforded to ensure that those commitment criteria are satisfied; and that the State, not the detainee, bears the burden of proof to justify continued civil commitment. *Foucha*, 504 U.S. at 77; *McCuistion*, 174 Wn.2d at 387; *In re Det. of Petersen*, 145 Wn.2d 789, 795-96, 42 P.3d 952 (2002). Thus, the State's and the dissent's interpretations of RCW 71.09.090(4)(a) present serious constitutional problems. Under both the rule of strict construction applicable to chapter 71.09 RCW and the canon of constitutional avoidance, we must reject these interpretations if possible. *Martin*, 163 Wn.2d at 508 (citing *Swanson*, 115 Wn.2d at 31); *Utter*, 182 Wn.2d at 434-35.

IV.     Marcum's Petition for Release Was Not a Prohibited "Collateral Attack"

Although it reads far too much into *McCuistion*'s dictum on substantive due process, the dissent is correct about another aspect of the *McCuistion* decision: that decision did hold that individuals committed under chapter 71.09 RCW may not use petitions for release to "collaterally attack" prior adjudications of their SVP status. 174 Wn.2d at 386; dissent at 16-17 (citing *McCuistion*, 174 Wn.2d at 385). But the dissent errs by concluding that Marcum's petition violated this rule. The dissent asserts that Marcum "stipulated" to his SVP status at the 2011 LRA revocation proceeding and concludes that Marcum's SVP status—i.e., his mental illness and

19

dangerousness—was therefore determined at that proceeding. Dissent at 16. This is incorrect.

Marcum did not stipulate to his SVP status at the 2011 revocation hearing. He stipulated only that his LRA placement—at which he was depressed and lethargic—should be revoked. And, as noted above, the court made only one finding at the revocation hearing that was related to Marcum's SVP status: the finding that he was, as of the time of the revocation order, "civilly committed as a[n] . . . SVP." CP at 133. That finding is not tantamount to a review of Marcum's SVP status, and it does not constitute a determination that he continues to meet the statutory definition of an SVP.[12]

---

[12] The dissent appears to read such a requirement into RCW 71.09.098(5), (6), and (8), which govern revocation and modification of a civilly committed person's conditional release. Dissent at 16-17. But none of these statutes contains any requirement that the trial court inquire into SVP status at an LRA revocation hearing. Instead, they provide that the State bears the burden of proving a violation of the conditional release terms or a need for modification, RCW 71.09.098(5); that if the State meets that burden and the issue is revocation, the court must then consider several factors, including "[t]he nature of the condition that was violated . . . in the context of the person's criminal history and underlying mental conditions," RCW 71.09.098(6)(i). The clear purpose of these requirements is to ensure that the trial court carefully consider whether a revocation is justified in a contested case. The dissent is correct that *after* an LRA placement is revoked pursuant to these rules, RCW 71.09.098(8) provides that the "person whose conditional release has been revoked shall be remanded to the custody of the secretary for control, care, and treatment in a total confinement facility as designated in RCW 71.09.060(1)," the basic commitment procedure subsection requiring a determination beyond a reasonable doubt that "the person is an SVP." *See* dissent at 17. But, as explained above, that determination did not occur in Marcum's case: instead, the trial court found only that he was currently "civilly committed as a[n] . . . SVP." CP at 133. The dissent asserts that this must have

20

Nevertheless, the dissent treats the 2011 order revoking Marcum's LRA placement as if it were a final, binding determination of his SVP status. This approach conflicts with the record. And it is particularly odd since the dissent agrees that Marcum need *not* show evidence of change since the last annual review—a proceeding at which a detainee's SVP status *is* actually reviewed and determined. *McCuistion*, 174 Wn.2d at 388 (due process and RCW 71.09.070 require annual review determining whether detainee continues to meet commitment criteria).

Because Marcum's SVP status was not determined in the 2011 LRA revocation proceeding, his petition for unconditional release—even though based on evidence of change predating that proceeding—was not a prohibited collateral attack.

V.    Applying RCW 71.09.090(4)(a) in the Way That Marcum Advocates Is
      the Only Way To Avoid Absurd Results and Constitutional Concerns

For the reasons given above, I do not entirely agree with Marcum's interpretation of RCW 71.09.090(4)(a). His "apples and apples" theory does not

---

been a full adjudication of Marcum's SVP status because it would be "absurd" to suggest that the trial court "would continue to detain an individual who is no longer an SVP." Dissent at 18. I respectfully disagree where, as here, the stipulating party expressly preserves the issue of unconditional release. *See supra* p. 3 (citing CP at 132). The dissent effectively holds that when the Department seeks to revoke an LRA placement, the responding party must immediately either litigate their current SVP status or forever waive the right to do so. I see no support for such a rule in chapter 71.09 RCW.

account for the fact that RCW 71.09.090(4)(b) makes the exact same kind of "change" a prerequisite to trials on *both* LRA reinstatement *and* unconditional release. Nevertheless, the outcome that Marcum seeks in this case—an application of the statute that allows him a release trial based on evidence of change occurring before his LRA revocation proceeding—makes sense. It does not conflict with any of the statute's plain terms, it does not result in any absurdity, and it does not raise due process concerns. Thus, it is the best available approximation of our legislature's intent.

I therefore agree with the majority that Marcum is entitled to a hearing on unconditional release. I would go further, however, and also hold that under RCW 71.09.090(4)(a), any petitioner is entitled to a full evidentiary hearing on unconditional release if he presents evidence of "change"—as defined in RCW 71.09.090(4)(b)—since the last proceeding at which his SVP status was actually adjudicated and determined.

## CONCLUSION

Ultimately, there is no way to interpret RCW 71.09.090(4)'s plain terms that does not result in some absurdity. Faced with a choice between imperfect interpretations, we must choose the one that does not raise due process concerns. This is consistent with the rule that ambiguous civil commitment statutes must be

22

construed in favor of liberty and with the canon of constitutional avoidance. *Hawkins*, 169 Wn.2d at 801; *Utter*, 182 Wn.2d at 434-35.

The State's and the dissent's interpretations of RCW 71.09.090(4)(a) pose serious constitutional problems. The only way to avoid these problems is to apply that ambiguous statute in the manner that Marcum advocates: to permit him to petition for unconditional release on the basis of change that occurred before his LRA revocation. I therefore concur in the majority's decision to reverse the Court of Appeals and remand for a full hearing on unconditional release.

No. 92501-1

YU, J. (dissenting)—When a sexually violent predator (SVP) petitions for unconditional release without the State's authorization, the person is entitled to a full evidentiary hearing "only when evidence exists, since the person's last commitment trial, or less restrictive alternative revocation proceeding, of a substantial change in the person's physical or mental condition such that" the person is no longer an SVP. RCW 71.09.090(4)(a). Our legislature has indicated that a qualifying change in the person's mental condition must have been "brought about through positive response to continuing participation in treatment." RCW 71.09.090(4)(b)(ii).

Nevertheless, the majority concludes that a full hearing is required in this case because the State allegedly failed to meet one half of its two-part prima facie burden. While the majority's reading of the statutory language is correct, the inquiry does not end there. In fact, RCW 71.09.090 contains additional safeguards to protect against the very result the majority now embraces: that a petitioner

seeking *unconditional* release may receive a full evidentiary hearing on that issue based solely on the fact that they may qualify for *conditional* release. By resting on an isolated section of the statute, the majority disregards the rest of the statute in favor of a swift resolution. For these reasons, I respectfully dissent.

FACTUAL AND PROCEDURAL HISTORY

Between 1989 and 1994, petitioner John H. Marcum was convicted of several sexually violent offenses against young boys, including one count of indecent liberties against a child, two counts of first degree child molestation, and one count of second degree child molestation. Marcum has admitted to sexually assaulting 21 boys between the ages of 5 and 13. Marcum has also admitted that he "preferred young boys for sexual partners, dated women to gain access to their children, groomed victims and their family members and chose the child who was an 'outcast' and the 'lowest in the family pecking order.'" Clerk's Papers (CP) at 16. Marcum has been diagnosed with pedophilia and a mixed personality disorder, mental abnormalities that make him likely to engage in predatory acts of sexual violence against young boys.

Prior to Marcum's scheduled release from prison in January 2000, the Department of Corrections asked Dr. Carla Van Dam to conduct a psychological evaluation of Marcum for possible civil commitment as an SVP. Dr. Van Dam concluded that Marcum met the criteria for involuntary treatment and was likely to

commit future predatory acts of sexual violence if not confined to a secure facility. The State then petitioned to commit Marcum as an SVP to the custody of the Department of Social and Health Services in a secure facility. Marcum stipulated to commitment and began sex offender treatment in total confinement at the Special Commitment Center (SCC).

Marcum's "success in treatment [was] tempered by his on-going passive-aggressive tendencies, his apparent pride in what he refers to as his 'Walla Walla glare' used to intimidate others, and his own acknowledgement that he is 'a great manipulator.'" *Id.* at 112. However, he did progress to the point that, in 2009, the SCC recommended that Marcum be transitioned to a less restrictive alternative (LRA) placement at the Pierce County Secure Community Transition Facility (SCTF). As a condition of his LRA placement and in accordance with RCW 71.09.092, Marcum was ordered (and agreed) to engage in sexual deviancy treatment with Dr. Vincent Gollogly and to comply with Dr. Gollogly's treatment plan. *Id.* at 85, 88-89. Marcum violated this condition.

When Marcum first entered the SCTF, he anticipated a "relatively quick transition," planning to get a job within about six months and to be released within a year or two. *Id.* at 52. However, Marcum "had not anticipated the nature and extent of difficulties that he would encounter at the SCTF," which quickly led him to "become impatient, with low morale and low motivation." *Id.* at 43. Marcum

found that the lack of structure at the SCTF made it difficult to "keep himself busy" and reverted to behaviors "that reflected his maladaptive life cycle, such as isolating, not speaking his mind, or poor hygiene." *Id.* Although staff recommended positive activities that Marcum could engage in, "he was handling stressors by driving others away and isolating." *Id.* at 48.

The majority brushes aside Marcum's deteriorating behavior as "not . . . directly related to sexual offending." Majority at 2. To the contrary, Dr. Gollogly noted that Marcum's "loneliness and feelings of rejection were significant risk factors during his offending," CP at 65, and Marcum's behavior at the SCTF was consistent with the first three steps of his "sexual assault cycle": becoming depressed, isolating himself, and refusing to open up to new people, *id.* at 97.

Marcum also refused work opportunities at the SCTF because he felt the pay was too low and the deductions for the cost of his care were too high. *Id.* at 50. Because Marcum did not take advantage of available work opportunities, he ran out of money and started borrowing or trading cigarettes with other SCTF residents, even after repeated warnings that this was against the rules. *Id.* at 123.

Marcum's problems at the SCTF increased over time, to the point where he "could not progress in treatment due to a poor attitude, frustration, and irritability regarding his transitional programming." *Id.* at 43. Marcum received several

4

warnings regarding his lack of motivation and minimal cooperation with treatment, and was specifically "warned that if he did not apply himself and improve his situation, the Senior Clinical Team would be unable to consider him for a step down LRA and recommend that he be returned to the main SCC facility for minimal cooperation with supervision and treatment expectations." *Id.* at 122. However, he failed to make further progress and when asked to reflect on his poor transitioning, Marcum blamed the SCTF program. *Id.* at 123.

Approximately two years into Marcum's placement at the SCTF, Dr. Gollogly terminated Marcum's treatment, stating, "At this time, I do not believe I can help him any further, due to his attitude, frustration and irritability regarding his transitional programming at the SCTF." *Id.* The order for Marcum's LRA placement explicitly provided that if Dr. Gollogly terminated Marcum's treatment, Marcum would "immediately be apprehended and taken into custody until such time as a hearing can be scheduled to determine . . . whether [Marcum's LRA] should be revoked." *Id.* at 93. Accordingly, Marcum was returned to total confinement and, in March 2011, the State moved to revoke Marcum's LRA.

In response, Marcum stated that he "wishe[d] to be revoked from this current [LRA] placement." *Id.* at 131 (boldface omitted). His attorney certified that he had spoken with Marcum about "potential alternatives to revocation" pursuant to RCW 71.09.098, which allows for either revocation or modification of LRA

placements. *Id.* at 130. Marcum's attorney explored the possibility of alternative treatment providers or a different placement, but did not find any. *Id.* at 130-31. In May 2011, the court accepted Marcum's stipulation, revoked Marcum's LRA placement, and ordered that he remain in total confinement at the SCC. *Id.* at 135. Marcum did not participate in any further sex offender treatment at the SCC because he refused to be placed in "phase 2 of the program." *Id.* at 55.

At his annual review in May 2012, Marcum stipulated to his continuing commitment at the SCC and the court made an express finding that his "condition remains such that he continues to meet the statutory definition of a sexually violent predator." *Id.* at 14. As required by RCW 71.09.090(2)(a), the order continuing Marcum's commitment did "not prevent him from obtaining such evidence [of a qualifying change in his condition] in the future or from petitioning the court, at any time, for conditional or unconditional release." *Id.* at 14.

For Marcum's next annual review in May 2013, Dr. Regina Harrington submitted a report. Dr. Harrington noted that "there was no apparent indication of a deterioration in [Marcum's] sexual regulation, though there has been no corroborating data regarding this assertion" because he had refused to participate in sex offender treatment. *Id.* at 17. Marcum reported to Dr. Harrington that while he had "some hopefulness about possible release . . . he cannot really imagine living freely in the community." *Id.* at 22. Dr. Harrington ultimately concluded that

Marcum continued to meet the statutory definition of an SVP, but had "reached maximum benefit from inpatient treatment" and would likely benefit from a conditional release to an LRA. *Id.* at 23. For whatever reasons, unknown to us, Marcum did not seek conditional release to an LRA.

Rather, Marcum then petitioned for *unconditional* release, supported by an expert evaluation by Dr. Paul Spizman, who opined that Marcum no longer met the definition of an SVP. *Id.* at 74. Dr. Spizman's report stated that Marcum would be interested in attending sex offender treatment if he were unconditionally released, but acknowledged that Marcum had not engaged in any sex offender treatment since his LRA had been revoked. *Id.* at 44. While Marcum outlined a plan for unconditional release, including where he would live and how he would cope with future challenges, he did not in any way indicate that he was seeking or would be willing to enter any kind of LRA placement.

The trial court found that Marcum "has not engaged in treatment for over two years," and therefore concluded that Marcum had not established probable cause to believe that

> [h]is mental condition has so changed through positive response to continuing participation in treatment such that he no longer meets the definition of a sexually violent predator; or release to a less restrictive alternative is in his best interest, and conditions can be imposed that would adequately protect the community.

7

*Id.* at 76-77. The court thus ordered Marcum's continuing commitment at the SCC.

Marcum appealed, arguing that the change in his mental condition should be measured from the time of his original commitment, not from the time of his LRA revocation. The Court of Appeals affirmed in a split, published opinion. *In re Det. of Marcum*, 190 Wn. App. 599, 606, 360 P.3d 888 (2015). We granted Marcum's petition for review. *In re Det. of Marcum*, 185 Wn.2d 1010, 367 P.3d 1083 (2016).

STANDARD OF REVIEW

We review questions of statutory interpretation de novo. *In re Det. of Martin*, 163 Wn.2d 501, 506, 182 P.3d 951 (2008). We look to the plain language and if it is unambiguous, our inquiry ends. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). Our chief purpose in statutory interpretation is "to determine and give effect to the intent of the legislature."[1] *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012).

The primary intent behind the statutes governing SVPs, chapter 71.09 RCW, is to ensure public safety. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 10, 857 P.2d 989 (1993). To effect this purpose, an SVP who petitions for unconditional

---

[1] Contrary to Marcum's assertion, while the SVP statutes are subject to strict interpretation, we have never applied the rule of lenity, a rule of construction applicable in some *criminal* cases, to chapter 71.09 RCW, a *civil* commitment scheme. *See* Pet. for Review at 6 (citing *In re Det. of Hawkins*, 169 Wn.2d 796, 801, 238 P.3d 1175 (2010)).

release without the State's authorization has a threshold burden of establishing probable cause to believe that the person is no longer an SVP. RCW 71.09.090(2)(a)(i). "A trial court's determination as to whether evidence establishes probable cause is subject to de novo review." *State v. McCuistion*, 174 Wn.2d 369, 382, 275 P.3d 1092 (2012).

ANALYSIS

At the outset, it must be noted that the majority resolves this case in a manner that neither party requested or briefed, and that the Court of Appeals did not address, a point the majority readily acknowledges. Majority at 1 n.1. We should resolve this case on the question posed to us by the parties and so clearly articulated by the Court of Appeals: When an SVP petitions for an evidentiary trial for release, from what benchmark must a trial judge consider whether the SVP has demonstrated improvement due to treatment? Is it measured from the date of the SVP's original commitment trial or from the more recent date of an LRA revocation proceeding?

We have been asked to decide whether Marcum is entitled to an unconditional release trial even though he refused to participate in sex offender treatment after his LRA was revoked and the State's expert concluded on annual review that Marcum remained an SVP. By statute, where an SVP petitions for unconditional release without the State's authorization, the person must establish

probable cause to believe that due to continuing participation in treatment, the person's mental condition has changed "since the person's last commitment trial, or less restrictive alternative revocation proceeding." RCW 71.09.090(4)(a). As a matter of law, an SVP cannot meet this burden if he or she has admittedly refused to participate in treatment since being returned to total confinement after an LRA revocation. This result is consistent with the statute's plain language and the legislature's intent, and is neither absurd nor unconstitutional. I would therefore affirm that Marcum did not establish probable cause and was not entitled to an unconditional release trial.

A.   STATUTORY FRAMEWORK

An SVP is a person who has been "convicted of or charged with a crime of sexual violence" and who suffers from "a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). After a person is initially found to be an SVP, the State performs annual reviews to determine whether the person continues to be an SVP, as required to satisfy "[s]ubstantive due process." *McCuistion*, 174 Wn.2d at 385 (citing *Jones v. United States*, 463 U.S. 354, 368, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983)); *see also* RCW 71.09.070(1). If the State determines at its annual review that the person's condition has so changed that he or she is no longer an SVP, then it must authorize

the person to petition for unconditional release and the court must set a full hearing. RCW 71.09.090(1).

If the State does not authorize a petition for unconditional release, the SVP still has a statutory right to file such a petition. RCW 71.09.090(2)(a). Before ordering a full evidentiary hearing, however, the court must determine that there is probable cause to believe unconditional release is justified because the person is no longer an SVP. RCW 71.09.090(2)(a). Probable cause is established if the State fails to produce evidence that the person remains an SVP, or if the person produces evidence that, if believed, would be sufficient to prove he or she is no longer an SVP. *McCuistion*, 174 Wn.2d at 380.

However, the initial determination of SVP status need not be relitigated each time an SVP petitions for unconditional release. Rather, the initial determination that a person is an SVP is treated as a "verity," and suitability for unconditional release "necessarily requires a showing of change." *Id.* at 385. Where a person alleges a change in his or her mental (as opposed to physiological) condition, the legislature has specified that the change must have been "brought about through positive response to continuing participation in treatment." RCW 71.09.090(4)(b)(ii). This change must have occurred "since the person's last commitment trial, or [LRA] revocation proceeding." RCW 71.09.090(4)(a).

11

The majority holds that in every petition, the State must first make a prima facie showing both that the petitioner continues to meet the definition of an SVP and that conditional release to an LRA is not appropriate. Majority at 7. The majority is correct in its reading of RCW 71.09.090(2)(b), and the State does not dispute that it carries a two-part prima facie burden. Suppl. Br. of Resp't State of Wash. at 5. Nevertheless, the inquiry does not end there.

The purpose of the show cause hearing is to provide the court with an opportunity "to determine whether probable cause exists to warrant a hearing on whether the person's condition has so changed" as it relates either to the person's status as an SVP or to whether conditional release to an LRA would be appropriate. RCW 71.09.090(2)(a). If the court finds probable cause as to one or both of these issues—either because the State failed to meet its prima facie burden or because the petitioner presented sufficient evidence of probable cause—the court "shall set a hearing on either or both issues." RCW 71.09.090(2)(c). However, "[t]he court may not find probable cause for a trial addressing less restrictive alternatives unless a proposed less restrictive alternative placement meeting the conditions of RCW 71.09.092 is presented to the court at the show cause hearing." RCW 71.09.090(2)(d).

The record reveals that no such proposed LRA placement was before the court at the show cause hearing. Thus, the court could not find probable cause for

12

a trial addressing LRAs even if the State failed to meet this part of its prima facie burden.[2] Instead, the court could order a trial only on the issue of whether Marcum continued to meet the definition of an SVP. Because the State clearly met its prima facie burden on this point, Marcum was required to present evidence of probable cause that his condition had so changed that he no longer met the definition of an SVP. The issue before the trial court was whether Marcum had met this burden. As it happens, this is the issue briefed and argued by the parties and properly before this court.

It is undisputed that Marcum refused to participate in any sex offender treatment after his LRA was revoked. Without *any* participation in treatment, an SVP certainly cannot demonstrate a change "brought about through positive response to *continuing* participation in treatment."[3] RCW 71.09.090(4)(b)(ii) (emphasis added); *see also McCuistion*, 174 Wn.2d at 390. However, Marcum contends that this does not matter because the trial court should have used

---

[2] The majority seemingly agrees, noting that the issue at trial shall be to "determine whether Marcum is entitled to unconditional release (as he asserts)." Majority at 9 n.7. Yet this trial for unconditional release stems entirely from the fact that Marcum may qualify for conditional release to an LRA. Under the majority's reasoning, a petitioner may force the State to relitigate the question of unconditional release over and over again, even when the court does not find probable cause to believe that the petitioner qualifies for unconditional release.

[3] We therefore need not address Marcum's argument that the Court of Appeals improperly weighed the evidence on appeal. Dr. Spizman's report, even if believed, would not be sufficient to show that Marcum's mental condition changed since his LRA revocation due to continuing participation in treatment. *See McCuistion*, 174 Wn.2d at 382.

13

Marcum's 2001 commitment trial as a reference point for measuring change, rather than his 2011 LRA revocation.

B.  PROOF OF CHANGE WAS CORRECTLY MEASURED SINCE MARCUM'S LAST LRA REVOCATION PROCEEDING

Marcum contends that the date from which the court must measure change depends on the nature of the relief he seeks. He argues that a person seeking an LRA placement must show change since the last LRA revocation, while a person seeking unconditional release may meet his or her burden by showing change since the initial commitment. The State, meanwhile, contends that change must be measured from the most recent commitment proceeding or LRA revocation, whichever is later. This court should agree with the State's interpretation because it is supported by the statute's plain language and legislative history, and does not lead to absurd or unconstitutional results.

*1.  Plain language*

RCW 71.09.090(4)(a) provides, in its entirety:

Probable cause exists to believe that a person's condition has "so changed," under subsection (2) of this section, only when evidence exists, *since the person's last commitment trial, or less restrictive alternative revocation proceeding*, of a substantial change in the person's physical or mental condition such that the person either no longer meets the definition of a sexually violent predator or that a conditional release to a less restrictive alternative is in the person's best interest and conditions can be imposed to adequately protect the community.

14

(Emphasis added.) The State's interpretation of the statute is clearly supported by this plain language, which specifically refers to the "last" proceeding and includes both commitment trials and LRA revocations as possible reference points. Marcum, meanwhile, points to RCW 71.09.090(4)(b), which refers to "change" since the SVP's "last commitment trial proceeding," and contends that this language supersedes RCW 71.09.090(4)(a), precluding the trial court from using Marcum's LRA revocation as a reference point.

A plain language inquiry does require us to consider the statutory language in context, but RCW 71.09.090(4)(a) and (4)(b) address different aspects of the probable cause standard. RCW 71.09.090(4)(a) defines the probable cause standard. RCW 71.09.090(4)(b) *limits*, rather than *expands*, the circumstances under which an individual can demonstrate probable cause by requiring that the evidence come from a "licensed professional" and that the evidence show either a permanent "identified physiological change" or a change in "mental condition brought about through positive response to continuing participation in treatment." Marcum's reading does not account for this statutory structure.[4]

Marcum also contends that even though nothing in the statutory language says so, we must interpret the statute as requiring courts to determine the appropriate reference point depending on the type of relief requested because LRA

_____

[4] It also does not account for the legislative history, discussed further below.

15

revocation "'involves a separate inquiry and a different showing'" than that required for initial civil commitment. Pet'r's Suppl. Br. at 10 (quoting *In re Det. of Bergen*, 146 Wn. App. 515, 530, 195 P.3d 529 (2008)). This argument ignores the context in which LRA revocations are conducted, and Marcum has not shown that we must adopt his interpretation in order to avoid absurd results.

A person's SVP status, which requires that the "person must be both mentally ill and dangerous," is the source of the State's authority to civilly commit the person in accordance with chapter 71.09 RCW. *Young*, 122 Wn.2d at 27 (footnote omitted). LRA placement is less restrictive than total confinement, but it is still a form of civil commitment. RCW 71.09.020(16). Thus, LRA placement is allowed only for individuals who *are* SVPs but can be conditionally released to a less restrictive setting while serving the person's best interests and adequately protecting the community. RCW 71.09.090(3)(d). Similarly, LRA revocation is allowed only for individuals who *remain* SVPs and whose LRA placement conditions did *not* adequately advance their treatment or protect the public. RCW 71.09.098(5), (6), (8).

By stipulating to his LRA revocation and return to total confinement, Marcum necessarily stipulated that he remained an SVP subject to civil commitment as of that time. CP at 133. The trial court understood this, noting that the LRA revocation hearing "was the last point in time where the Court had an

opportunity to evaluate [Marcum's] mental condition and his engagement in treatment." Verbatim Report of Proceedings (Nov. 22, 2013) at 25. Ignoring this and measuring Marcum's change from his initial commitment proceeding would run contrary to the statutory structure and our own precedent. *See McCuistion*, 174 Wn.2d at 385 (noting that the court should avoid "an endless cycle of review and rereview").

The concurrence disagrees, suggesting that Marcum's stipulation to revoke his LRA "did not result in any finding or conclusion that Marcum continued to meet the definition of an SVP." Concurrence at 3; *see id.* at 20. At the revocation hearing, the court found that Marcum "is involuntarily civilly committed as a sexual violent predator (SVP), as that term is defined in RCW 71.09.020(18)." CP at 133. This finding did more than simply note Marcum's commitment status, as the concurrence suggests; it reaffirmed that Marcum continued to meet the definition of an SVP, which is "a prerequisite to civil commitment as a sex offender." Concurrence at 3-4.

The concurrence argues that the trial court need not inquire into the SVP status of an individual at an LRA revocation hearing. Concurrence at 20 n.12. But the statute detailing the revocation process contradicts this argument. An individual whose conditional release has been revoked must be remanded to total confinement as designated in RCW 71.09.060(1). RCW 71.09.098(8). The court

had no authority to order that Marcum "remain confined at the Special Commitment Center (SCC) on McNeil Island for care, control and treatment," CP at 135, unless it first found that Marcum continued to meet the definition of an SVP. The suggestion that the trial court would continue to detain an individual who is no longer an SVP is absurd and not supported by the record. Marcum never challenged whether he was still an SVP at the time of his 2011 self-imposed revocation and did not raise this issue on appeal. Rather, the concurrence invents the question in order reach its desired result.

Moreover, while Marcum contends that the issue of his LRA violations was unrelated to the issue of whether he remained an SVP, this argument overlooks the purpose of LRA placement conditions and the specific nature of Marcum's violations. All LRA placements necessarily come with both statutory and court-ordered conditions "to ensure compliance with treatment and to protect the community" from the danger that the person still poses as an SVP. RCW 71.09.096(2). The conditions Marcum violated here (treatment with a certified sex offender treatment provider and compliance with the provider's treatment plan) were statutorily required and explicitly included in the order releasing him to the SCTF. CP at 88-89; RCW 71.09.092(1), (2), (4).

Thus, Marcum's violations were directly related to his continued SVP status, even though they did not come in the form of sexually reoffending. Marcum failed

18

to comply with the treatment deemed necessary by both the court and the

legislature to ensure that he would not reoffend if he were someday released into

the community with regular access to his preferred victims.[5] Using Marcum's

LRA revocation as the reference point for assessing probable cause is therefore not

absurd at all. It simply recognizes that in 2011, Marcum was an SVP who was not

able to comply with the steps necessary to advance his treatment and protect the

public, and requires him to show change due to continuing participation in

treatment since that time.

Marcum also argues that the State's interpretation must be rejected because

it could allow the State to unconstitutionally keep a person in total confinement,

even if the person is no longer an SVP.[6] This argument ignores the difference

between the minimal requirements to satisfy substantive due process and the extra

protections that the legislature has chosen to grant by statute. "Substantive due

process requires only that the State conduct periodic review of the patient's

---

[5] It is also worth noting that even when the State proves that an SVP violated an LRA placement condition, the LRA placement is not automatically revoked. Rather, the court must consider whether the placement should be revoked or whether its conditions can be modified depending on the person's condition and history, the nature of the violation, and the potential danger to the public. RCW 71.09.098(6)-(7). Even though Marcum stipulated to revoking his LRA, his counsel's declaration clearly states that he looked into possible modifications of the LRA conditions and did not find any that would be suitable. CP at 130-31.

[6] Notably, Marcum's interpretation may raise a constitutional issue of its own by ignoring the fact that a person whose LRA has been revoked remains an SVP. This could implicitly authorize the State to revoke a person's LRA and return the person to total confinement, even if the person is no longer an SVP.

19

suitability for release." *McCuistion*, 174 Wn.2d at 385. This requirement is met by the annual review process. *Id.* at 385-86. Meanwhile, "[a] committed person's *statutory* right to show his condition has 'so changed' provides additional safeguards that go beyond the requirements of substantive due process." *Id.* at 385 (emphasis added). The State does not act unconstitutionally by declining to provide more robust statutory rights than due process requires.

The State's interpretation is thus supported by the plain language of the relevant statutes, while Marcum's is not, and Marcum has not shown that the State's interpretation leads to absurd or unconstitutional results.

2.    *Legislative history*

Importantly, any possible confusion caused by the different language in RCW 71.09.090(4)(a) and (4)(b) can be resolved by considering legislative history, which clearly indicates that Marcum's interpretation is not what the legislature intended. As the more recently amended subsection addressing the specific issue presented here, RCW 71.09.090(4)(a) must control, and it plainly provides that the appropriate reference point is the most recent commitment trial or LRA revocation, whichever is later.

The language Marcum relies on from RCW 71.09.090(4)(b) was amended in 2005, in response to *In re Detention of Young*, 120 Wn. App. 753, 86 P.3d 810 (2004), which concerned the *nature*, rather than the *timing*, of change that must be

shown to establish probable cause. In 2002, Young sought release at his annual show cause hearing on the basis that he was 61 years old and was statistically unlikely to reoffend. *Id.* at 755-56. Young relied on actuarial studies linking age to recidivism and showing that SVPs over the age of 60 posed almost no risk of reoffending. *Id.* at 760-61. At that time, the statute did not define what sorts of changes were required under the probable cause standard. *Id.* at 757. As a result, the Court of Appeals held that the actuarial studies sufficed to show probable cause that Young had so changed as a result of his age that a new commitment trial was warranted. *Id.* at 763. In response to *Young*, the legislature amended RCW 71.09.090(4)(b) to require "current evidence from a licensed professional" of "change in the person's mental condition brought about through positive response to continuing participation in treatment." RCW 71.09.090(4)(b)(ii); *see* FINAL B. REP. ON S.B. 5582, 59th Leg., Reg. Sess. (Wash. 2005).

Meanwhile, the relevant language in RCW 71.09.090(4)(a) was revised more recently, in 2009, and specifically addresses the appropriate *time* from which to measure change by adding LRA revocation proceedings as a possible reference point. LAWS OF 2009, ch. 409, § 8(2)(d). This amendment came shortly after *In re Detention of Jones*, 149 Wn. App. 16, 201 P.3d 1066 (2009), which Marcum relies on to support his argument. Jones, a committed SVP, petitioned for conditional release to a second LRA after having his first LRA revoked. *Id.* at 21. Jones relied

21

on a report espousing the progress he had made through treatment since his initial commitment trial. *Id.* at 30. At that time, RCW 71.09.090(4)(a) measured a person's change in condition from only the last commitment trial proceeding. *Id.* The State argued that the term "'commitment trial proceeding'" included the petitioner's LRA revocation proceeding, but the Court of Appeals rejected the State's "broad construction" of the statute. *Id.* Although *Jones* is not discussed in the final bill report for the 2009 amendments, the statute's added language contrasted against the court's opinion in *Jones* cannot be ignored. FINAL B. REP. ON SUBSTITUTE S.B. 5718, 61st Leg., Reg. Sess. (Wash. 2009); *compare Jones*, 149 Wn. App. at 30 ("[A]n LRA revocation hearing cannot be considered a 'commitment trial proceeding.'"), *with* RCW 71.09.090(4)(a) ("Probable cause exists to believe that a person's condition has 'so changed' . . . when evidence exists, since the person's last commitment trial, or less restrictive alternative revocation proceeding, of a substantial change . . . .").

I agree with the Court of Appeals that RCW 71.09.090(4)(a) now "directs the trial court to measure 'change' from the last time it had to assess the person's condition—whether at a commitment hearing or a subsequent LRA revocation." *Marcum*, 190 Wn. App. at 603. The alternative holding Marcum advocates would elevate the earlier, less specifically applicable language in RCW 71.09.090(4)(b) above the more recent, more specifically applicable language in RCW

71.09.090(4)(a) and result in courts engaging in the same sort of repetitious review of evidence that existed under *Jones*, which the legislature rejected.

Therefore, the plain language and legislative history support the conclusions reached by the trial court and Court of Appeals, which do not lead to absurd or unconstitutional results. The trial court at Marcum's LRA revocation proceeding determined that Marcum continued to meet the statutory definition of an SVP, and the LRA revocation proceeding was the appropriate reference point from which to measure change. To obtain a new trial for unconditional release without collaterally attacking his LRA revocation, Marcum needed to show probable cause that his condition had so changed due to continuing participation in treatment since the LRA revocation hearing that he no longer met the statutory definition of an SVP. Marcum did not make this showing as a matter of law.

CONCLUSION

The majority embarks on a surprising analytical expedition, deftly avoiding the issues briefed by the parties so that it may resolve this case without delving too far into the SVP statutory provisions. Nevertheless, general disdain for civil commitments is no reason to disregard the legislature's intent. By reading RCW 71.09.090(2)(c) in isolation, the court does remarkable damage to the rest of the statute—and to the parties as well. Either the State is burdened with perpetual

relitigation of settled issues, or Marcum is burdened with an LRA he never requested.

There is no doubt that Marcum made progress through treatment since his initial commitment. However, Marcum continued to meet the definition of an SVP when his LRA was revoked for violations of its conditions. Because Marcum petitioned for unconditional release, probable cause required evidence that Marcum's condition had so changed since his LRA revocation due to continuing participation in treatment that he no longer fit the statutory definition of an SVP. The trial court found no such evidence; nevertheless, the majority holds that the court must order a full trial for unconditional release on the sole basis that Marcum may qualify for conditional release to an LRA. For all the above reasons, I would affirm the Court of Appeals and hold that Marcum is not entitled to an evidentiary trial.

Yu, J.

Owens, J.

González, J.